UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (DKT. 36)**

I.    **Introduction**

J.V., a minor ("J.V."), through his guardian ad litem and mother Anabel Franco ("Franco") and B.K., a minor ("B.K.") through his guardian ad litem and mother Cynthia Brown ("Brown") (J.V. and B.K. collectively, "Plaintiffs") brought this putative class action on October 7, 2015 on behalf of themselves and all other similarly situated students. Complaint, Dkt. 1.

On November 6, 2015, Plaintiffs filed the First Amended Complaint ("FAC"), Dkt. 28. It advances 15 causes of action against the Pomona Unified School District (the "District"), Pomona Special Education Local Planning Area ("SELPA"), Ana Petro ("Petro"), Christine Goens ("Goens"), Kameron Shields ("Shields"), Beatriz Krivan ("Krivan"), Jennifer Yales ("Yales"), Selene Amancio ("Amancio"), Brian El Mahmoud ("El Mahmoud"), Daniella Soto ("Soto"), Mary Garcia ("Garcia"), Cindy Green ("Green"), Elaine Markofski ("Markofski"), Superintendent Richard Martinez in his official capacity only ("Martinez") and Dolores Murillo ("Murillo") (collectively "Defendants"). Id. The 15 causes of action are as follows: (i) Americans with Disabilities Act of 1990, 42 U.S.C. §§ et seq.; (ii) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, et seq.; (iii) Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq.; (iv) Cal. Gov. Code § 11135, et seq.; (v) 42 U.S.C. Section 1983 (4th Amendment); (vi) 42 U.S.C. Section 1983 (Due Process Clause, 14th Amendment); (vii) 42 U.S.C. Section 1983 (Equal Protection Clause, 14th Amendment); (viii) False Imprisonment; (ix) Battery; (x) Assault; (xi) Intentional Infliction of Emotional Distress; (xii) Negligent Supervision; (xiii) Negligence; (xiv) Cal. Educ. Code §§ 200, 201, 220, 260; and (xv) Equal Protection Clause of the California Constitution, Article 1, Section 7(A) & Article IV, Section 16(A) of the California Constitution. Id. Plaintiffs, who are minor students who received special education services, claim that certain Defendants physically

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

abused them starting in August 2013, and thereafter certain Defendants failed adequately to document or report this abuse, and also failed to take reasonable steps to prevent further abuse.

On December 14, 2015, Defendants filed a Motion to Dismiss the FAC ("Motion"), Dkts. 36, 37.[1] Plaintiffs opposed the Motion ("Opposition") (Dkt. 42) and Defendants replied ("Reply" (Dkt. 43)). A hearing on the Motion was held on April 11, 2016, and the matter was taken under submission. Dkt. 48. For the reasons stated in this Order, the Motion is **DENIED IN PART AND GRANTED IN PART**. These rulings are summarized in the following chart:

| | Claim | Defendants | Relief Sought | Outcome |
|---|---|---|---|---|
| 1 | The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*<br><br>FAC ¶¶ 91-95, Dkt. 28 | The District, SELPA | -Injunctive relief pursuant to 42 U.S.C. § 12188<br>-Declaration that actions violate the ADA<br>-Damages according to proof<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 95, Dkt. 28 | Defendants did not move to dismiss this claim |
| 2 | Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.*<br><br>FAC ¶¶ 96-103, Dkt. 28 | The District, SELPA | -Order and judgment enjoining Defendants from violating 29 U.S.C. §§ 794, *et seq.*<br>-Declaration that Defendants' actions violate 29 U.S.C. §§ 794, *et seq.*<br>-Damages according to proof<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 103, Dkt. 28 | Defendants did not move to dismiss this claim |
| 3 | Unruh Civil Right Act, Cal. Civ. Code §§ 51, *et seq.* | District, SELPA, Petro, Goens, Shields, Krivan, Murillo, Garcia, | -Injunctive relief<br>-For every offense, actual damages and | -District: Motion granted without prejudice to refiling in |

---

[1] Defendant Petro did not join in the Motion, but answered the FAC. Dkt. 35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | | Date | October 27, 2016 |
|---|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | | |

| | | | | |
|---|---|---|---|---|
| | FAC ¶¶ 104-111, Dkt. 28 | Green, Yales, Amancio, El Mahmoud, Soto, Markofski, Martinez (in official capacity only | multiple damages of up to three times actual damages but in no case less than $4000 per offense pursuant to Cal. Civ. Code § 52 -Reasonable attorney's fees and costs  FAC ¶¶ 108, 110, 111, Dkt. 28 | state court on Eleventh Amendment grounds -SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds -Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds -Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: Motion is granted without prejudice |
| 4 | Cal. Gov. Code §§ 11135, *et seq.*  FAC ¶¶ 112-118, Dkt. 28 | District, SELPA | -Order and judgment enjoining Defendants from violating Cal. Gov. Code §§ 11135, *et seq.* -Damages according to proof -Reasonable attorney's fees and costs  FAC ¶ 118, Dkt. 28 | Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds |
| 5 | 42 U.S.C. § 1983, 4th Amendment  FAC ¶¶ 119-124, Dkt. 28 | Petro, Goens, Shields, Murillo, Green, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, District, SELPA, Martinez (in his official capacity only) | -Order and judgment enjoining Defendants from violating Plaintiffs' rights under 4th Amendment -Declaration that Defendants' actions violate Plaintiffs' rights under the 4th Amendment -Damages according to proof -Punitive damages (from individual Defendants only) -Reasonable attorney's fees and costs | -District: Motion granted with prejudice on Eleventh Amendment grounds -SELPA: Motion granted with prejudice on Eleventh Amendment grounds -Individual Defendants in Official Capacity: Motion granted without prejudice. Plaintiffs can pursue only prospective relief -Motion granted without prejudice as to Plaintiffs' unexplained |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

| | | | | |
|---|---|---|---|---|
| | | | FAC ¶ 124, Dkt. 28 | injuries on qualified immunity grounds<br>-Motion denied as to Shields, Murillo, Green, Soto, Garcia, Yales, Amancio, Krivan<br>-Motion granted without prejudice as to Goens, El Mahmoud |
| 6 | 42 U.S.C. § 1983, Due Process Clause of the 14th Amendment<br><br>FAC ¶¶ 125-131, Dkt. 28 | Petro, Goens, Shields, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, Murillo, Green, District, SELPA, Martinez (in official capacity only) | - Order and judgment enjoining Defendants from violating Plaintiffs' rights to substantive due process<br>-Declaration that Defendants' actions violate Plaintiffs' rights to substantive due process<br>-Damages according to proof<br>-Punitive damages (from individual Defendants only)<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 131, Dkt. 28 | -District: Motion granted with prejudice on Eleventh Amendment grounds<br>-SELPA: Motion granted with prejudice on Eleventh Amendment grounds<br>-Motion granted with prejudice as to all remaining Defendants because the claims should be brought under the Fourth Amendment, not Substantive Due Process |
| 7 | 42 U.S.C. § 1983, Equal Protection Clause of the 14th Amendment<br><br>FAC ¶¶ 132-138, Dkt. 28 | Petro, Goens, Shields, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, Murillo, Green, District, SELPA, Martinez (in official capacity only) | -Order and judgment enjoining Defendants from violating Plaintiffs' rights to equal protection<br>-Declaration that Defendants' actions violate Plaintiffs' rights to equal protection<br>-Damages according to proof<br>-Punitive Damages (from individual | -District: Motion granted with prejudice on Eleventh Amendment grounds<br>-SELPA: Motion granted with prejudice on Eleventh Amendment grounds<br>-Individual Defendants in Official Capacity: Motion granted without prejudice. Plaintiffs can pursue only prospective relief<br>-Motion granted |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | | Date | October 27, 2016 |
|---|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | | |

| | | | Defendants only)<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 138, Dkt. 28 | without prejudice as to all remaining Defendants |
|---|---|---|---|---|
| 8 | False Imprisonment<br><br>FAC ¶¶ 139- 148, Dkt. 28 | Soto, Garcia, District, SELPA | -Damages according to proof<br>-Punitive damages (from individual Defendants only)<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 148, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Motion denied on Fed. R. Civ. P. 12(b)(6) grounds with respect to Soto and Garcia |
| 9 | Battery<br><br>FAC ¶¶ 149-158, Dkt. 28 | Petro, El Mahmoud, Soto, Garcia, District, SELPA | -Damages according to proof<br>-Punitive damages (from individual Defendants only)<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 158, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: Motion denied as to Soto and Garcia, |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

| | | | | Motion granted without prejudice as to El Mahmoud |
|---|---|---|---|---|
| 10 | Assault

FAC ¶¶ 159-168, Dkt. 28 | Petro, El Mahmoud, Soto, Garcia, District, SELPA | -Damages according to proof
-Punitive damages (from individual Defendants only)
-Reasonable attorney's fees and costs

FAC ¶ 168, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds
-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds
-Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds
-Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: Motion denied as to Soto and Garcia, Motion granted without prejudice as to El Mahmoud |
| 11 | Intentional Infliction of Emotional Distress

FAC ¶¶ 169-179, Dkt. 28 | Petro, El Mahmoud, Soto, Garcia, District, SELPA | -Damages according to proof
-Punitive Damages against individual Defendants
-Reasonable attorney's fees

FAC ¶¶ 177-79, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds
-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds -
Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds
-Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

| | | | | Motion denied as to Soto and Garcia, Motion granted without prejudice as to El Mahmoud |
|---|---|---|---|---|
| 12 | Negligent Supervision<br><br>FAC ¶¶ 180-193, Dkt. 38 | Petro, Goens, Shields, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, Murillo, Green, District, SELPA, Martinez (in official capacity only) | -Damages according to proof<br><br>FAC ¶ 193, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: Motion denied |
| 13 | Negligence<br><br>FAC ¶¶ 194- 204, Dkt. 28 | Petro, Goens, Shields, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, Murillo, Green, District, SELPA, Martinez (in official capacity only) | -Damages according to proof<br><br>FAC ¶ 204, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: Motion denied |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

| 14 | Cal. Educ. Code §§ 200, 201, 220, 260 *et seq.*<br><br>FAC ¶¶ 205-210, Dkt. 28 | Martinez (in his official capacity only) | -Order and judgment enjoining Defendants from violating Plaintiffs' rights under Cal. Educ. Code §§ 200, 201, 220, and 260, *et seq.*<br>-Declaration that Defendants' actions violate Plaintiffs' rights under Cal. Educ. Code §§ 200, 201, 220, and 260, *et seq.*<br>-Reasonable attorney's fees and costs<br><br>FAC ¶ 210, Dkt. 28 | Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds |
|---|---|---|---|---|
| 15 | Violation of the Equal Protection Clause of the California Constitution, Article I, Section 7(a) & Article IV, Section 16(a) of the California Constitution<br><br>FAC ¶¶ 211-215 | Petro, Goens, Shields, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, Murillo, Green, District, SELPA, Martinez (in official capacity only) | -Order and judgment enjoining Defendants from violating Plaintiffs' rights to equal protection under the California Constitution<br>-Declaration that Defendants' actions violate Plaintiffs' rights to equal protection under the California Constitution<br><br>FAC ¶ 215, Dkt. 28 | -District: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-SELPA: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants in Official Capacity: Motion granted without prejudice to refiling in state court on Eleventh Amendment grounds<br>-Individual Defendants on Fed. R. Civ. P. 12(b)(6) grounds: Motion granted without prejudice |

## II.   **Factual Background**

### 1.   The Plaintiffs

Plaintiffs are minor students with autism who live within the District. FAC, Dkt. 28 ¶ 13. Plaintiff J.V. was nine years old at the time the FAC was filed. *Id.* ¶ 14. As a result of his autism, he has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

severe speech and language impairment, insistence upon sameness and limitations on social behavior. *Id.* Plaintiff B.K. was twelve years old at the time the FAC was filed. *Id.* ¶ 15. As a result of his autism, he has significant communicative and adaptive deficits. *Id.*

2.    The Defendants

Defendant Richard Martinez is Superintendent of the District. He is named in his official capacity. FAC ¶ 17, Dkt. 28. Plaintiffs allege that

> The Superintendent accepts responsibility for the general efficiency of the school system, including the policies, practices, procedures, programs, activities, services, training, and employees of those schools. The Superintendent is responsible for the development of the school staff, and for the educational growth and welfare of the students, as well as for ensuring compliance with state and federal laws.

*Id.*

Defendant Ana Petro has been an instructional aide in the District and SELPA, She is named in her individual and official capacities. *Id.* ¶ 18. It is alleged that Petro "intentionally or unlawfully assaulted Plaintiff B.K. for no pedagogical purpose." *Id.* Petro has not joined in the motion to dismiss.

Defendant Christine Goens is the principal of Simons Middle School, which B.K. attended during the relevant time period. She is named in her individual and official capacities. *Id.* ¶ 19. The FAC alleges that Goens "has authority and control over Simons Middle School's programs and facilities, including policies, practices, procedures, programs, activities, services, training, and employees of those schools. The principal is responsible for ensuring that Simons Middle School complies with state and federal laws." *Id.* It further alleges that

> Goens waited several hours to call Ms. Brown to notify her of the abuse [of her son B.K.] FAC ¶¶ 65, 73. Goens deliberately withheld information from Ms. Brown related to the assault of B.K. FAC ¶¶ 68, 70- 71. When Ms. Brown requested a copy of B.K.'s education file, Goens told her that B.K.'s file had been lost, and she would have to "make it up." FAC ¶ 67.

Opposition, Dkt. 42 at 21.

Defendants Kameron Shields, Beatriz Krivan and Dolores Murillo have been employed by the District or SELPA as special education teachers. Each is sued in his or her individual and official capacity. FAC ¶ 20, Dkt. 28. Plaintiffs allege that "[t]eachers have authority and control of their classroom, including the policies, practices, procedures, facilities, maintenance, programs,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

activities, services, training, and employees of those classrooms. The teacher is responsible for ensuring that their classroom complies with state and federal laws." *Id.* The FAC also alleges that Shields

> had direct knowledge of B.K.'s injuries and concerning behaviors but did nothing in response. FAC ¶¶ 61, 64. Shields deliberately withheld information related to the assault of B.K. from Ms. Brown, and did not report the incident in B.K.'s home-school communication log which read: "No school tomorrow, have a great weekend." FAC ¶¶ 66, 68, 70-71.

Opposition, Dkt. 42 at 21- 22. The FAC alleges that Krivan

> had direct knowledge of J.V.'s injuries. FAC ¶¶ 41, 44. Krivan ignored Ms. Franco's repeated warnings that something was negatively affecting J.V. at school. FAC ¶¶ 41, 44. Following the illegal restraint on J.V., Krivan refused to provide information to Ms. Franco, including an incident report . . . which she promised would be (but was never) placed in J.V.'s backpack the next day. FAC ¶¶ 50-52.

*Id.* at 22.

Similarly, the FAC alleges that

> Murillo had direct knowledge of J.V.'s injuries. FAC ¶¶ 37, 44. Murillo had direct knowledge that J.V. reported that Defendant El Mahmoud was hurting him. FAC ¶ 40. Murillo had direct knowledge of Dr. Charlop's warnings for a change in J.V.'s intervention plan. FAC ¶ 46. Despite all of this, Murillo did nothing to address the concerns or protect J.V. FAC ¶¶ 40-47.

*Id.*

Defendant Jennifer Yales has been employed by the District or SELPA as the Director of Special Education. She is named in her individual and official capacities. FAC ¶ 21, Dkt. 28. It is alleged that "[t]he Director of Special Education has authority and control of the special education classrooms, including the policies, practices, procedures, facilities, maintenance, programs, activities, services, training, and employees of those classrooms. The Director of Special Education is responsible for ensuring that the DISTRICT schools comply with special education laws." *Id.* It is also alleged that

> Yales had direct knowledge of J.V.'s injuries and Dr. Charlop's recommendation for a change in intervention. FAC ¶¶ 42, 44-45. Defendant Yales personally wrote a letter to Ms. Franco denying Ms. Franco's request for a change in behavior intervention for J.V.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

in direct contradiction to Dr. Charlop's findings. FAC ¶ 48. Yales deliberately withheld information related to the assault of B.K. from Ms. Brown. FAC ¶ 71.

Opposition, Dkt. 42 at 21. These allegations are the basis for the claim that Yales "failed to exercise reasonable care in supervising J.V. and B.K." *Id.* (citing FAC ¶ 184, Dkt. 28).

Defendant Cindy Green has been employed by the District or SELPA as a special education coordinator. She is named in her individual and official capacities. FAC ¶ 22, Dkt. 28. Plaintiffs allege that Green "was responsible for attending IEP Team meetings; developing educational programming, including behavior intervention; and reporting to the Director of Special Education." *Id.* It is also alleged that

> Green had direct knowledge of J.V.'s injuries and his mother's concerns. FAC ¶¶ 42, 44. Green had direct knowledge of Dr. Charlop's warnings for a change in J.V.'s intervention plan and did nothing. FAC ¶ 46. Ms. Franco repeatedly contacted Green after J.V.'s restraint, but she did not respond or provide information. FAC ¶ 51.

Opposition, Dkt. 42 at 22.

Defendant Selene Amancio is the principal of San Antonio Elementary School, which J.V. attended. Like the other defendants, she is sued in her individual and official capacities. *Id.* ¶ 23. It is alleged that as a principal, Amancio "has authority and control over San Antonio Elementary School programs and facilities, including policies, practices, procedures, programs, activities, services, training, and employees of those schools. The principal is responsible for ensuring that San Antonio Elementary School complies with state and federal laws." *Id.* Specifically, it is alleged that

> Amancio had direct knowledge of J.V.'s injuries and his mother's concerns, but suggested J.V. was "clumsy." FAC ¶¶ 37, 41, 43, 44. Amancio had direct knowledge of Dr. Charlop's warnings for a change in J.V.'s interventions but did nothing in response. FAC ¶ 46. Ms. Franco repeatedly contacted Amancio after J.V.'s restraint, but she did not respond or provide information. FAC ¶ 51.

Opposition, Dkt. 42 at 22.

Defendants Daniella Soto and Mary Garcia were or are instructional aides employed by the District or SELPA. Each is sued in her official capacity. FAC ¶ 24, Dkt. 28. Plaintiffs allege that Soto and Garcia "intentionally and unlawfully restrained Plaintiff J.V. for no pedagogical purpose." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

Defendant Brian El Mahmoud has been a classroom aide employed by the District or SELPA. He is sued in his individual and official capacities. *Id.* ¶ 25. Plaintiffs allege that El Mahmoud "participated substantially in the events described herein against Plaintiff J.V." *Id.* Plaintiffs further allege that when J.V.'s mother Franco asked J.V. how he had been hurt, J.V. would sometimes reply "Mr. Brian." *Id.* ¶ 40. Because of J.V.'s limited communication abilities, he could not provide any additional details. *Id.*

Defendant Elaine Markofski has been a health services assistant employed by the District or SELPA. She is sued in her individual and official capacities. *Id.* ¶ 26. It is alleged that Markofski "knowingly and purposefully participated in covering up the abuse of students by failing to document all injuries." *Id.*

       3.    <u>Allegations as to J.V.</u>

From August 2011 to October 2014, J.V. attended San Antonio Elementary School ("San Antonio"). He was placed in an Autism Spectrum and Related Disorders class ("ASRD"), which was designed exclusively for students with disabilities. *Id.* ¶ 33. Before entering the ASRD class, J.V.'s individualized education plans ("IEPs") indicated that his behavior did not impede his learning and that he was "very sweet." *Id.* ¶ 34. Within the first months of attending San Antonio, Plaintiff J.V. came home with injuries for which the school provided no explanation, and his behavior became more aggressive. *Id.* ¶ 35.

On January 24, 2012, Defendants created a written behavior intervention plan for J.V. It stated that staff should "apply physical blocking if [J.V. demonstrated] aggression . . .  towards other students or staff." *Id.* ¶ 36. In January 2013, the plan was updated to state: "If [J.V.'s] aggression is directed toward another student, adults may move the other student to prevent injury." *Id.* Defendants kept this procedure in place until J.V. was no longer enrolled at San Antonio. *Id.*

During the 2011-12 and 2012-13 school years, J.V.'s mother, Franco, initiated many contacts with his teacher, Defendant Murillo, SELPA representatives Patti Adams and Debbie Montoya and Principal Amancio. *Id.* ¶ 37. She used them to express her concern regarding her son's ongoing injuries and behavioral changes, She received no support from the District or SELPA in response. *Id.*

On or about May 24, 2013, Franco filed a due process request with the Office of Administrative Hearings. *Id.* Shortly thereafter, the District and Franco entered into an agreement. Under its terms the District agreed that, beginning on August 15, 2013, it would provide J.V. with a full-time, one-on-one behavior aide through an outside agency, Autism Spectrum Therapies ("AST"). *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

Notwithstanding this arrangement, during the 2013 to 2014 school year, J.V. continued to sustain injuries that left visible marks, bruises and scratches on his body.[2] Defendants frequently failed to notify Franco that her son had been injured; when any information was provided, it was vague. *Id.* ¶¶ 38, 39. When Franco asked Defendants how these injuries occurred, she was told that it was unknown. *Id.* ¶ 38. On August 29, 2013, Franco received a notification from Markofski that J.V. had a "scratch on face." On November 5, 2013, Franco received a notice from Markofski that J.V. had sustained a "head injury" while at school. *Id.* ¶ 39.

When Franco asked her son about these injuries, J.V. would sometimes reply "Mr. Brian." Franco considered this to be a reference "to Defendant El Mahmoud, who was J.V.'s classroom aide." *Id.* ¶ 25, 40. J.V. was unable to provide any further explanation of his injuries due to his limited communication skills. *Id.* ¶ 40. Franco contacted Murillo to tell her what her son said about El Mahmoud. Murillo responded that she "didn't know what J.V. meant." *Id.*

Franco regularly attempted to discuss J.V.'s injuries with Murillo, Krivan, Amancio, Soto, El Mahmoud and Garcia; in response, Defendants suggested that J.V. was just "clumsy." *Id.* ¶ 41. After these unsuccessful attempts to get information, Franco contacted SELPA administrators, Patti Adams, Green or Yales to discuss her concerns. *Id.* ¶ 42.

At the same time that these unexplained injuries occurred, J.V.'s behavior became more aggressive both physically, and in damaging property. Such incidents increased from an average of seven times a day in January 2012 to 2.25 times per hour in January 2013; they were deemed "mild" conduct in January 2013, but "moderate" in January 2014. *Id.* ¶ 43. During a conversation in January 14, 2014, Amancio stated that other students had to be removed from class daily due to J.V.'s behavior. *Id.*

Franco continued to raise concerns at several IEP team meetings at which Murillo, Krivan, Amancio, Adams, Yales and Green were present. *Id.* ¶ 44. At the 2014 annual IEP for J.V., Franco presented a letter that she previously had written stating her concerns regarding J.V.'s physical safety and behavior, Defendants' lack of communication, their delay in making appropriate intervention and their failure to provide incident reports that Franco had requested. *Id.*

Franco next sought approval for an assessment by an outside evaluator, Dr. Majorie Charlop. *Id.* ¶ 45. On April 20, 2014, Charlop provided Defendants with a "Functional Behavior Analysis Assessment Report." It concluded that the behavior intervention program was being applied in a manner that reinforced J.V.'s noncompliant behavior, which caused it to escalate. *Id.* On or

---

[2] Franco contends J.V. came home on April 27, 2014, with several bruises and a puncture wound on his back. FAC, Dkt. 28 ¶ 38. On May 17, 2014, J.V. came home with a swollen lip. *Id.* On August 29, 2014, J.V. came home with bruises on his thigh and a large bruise on his ankle. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

about September 30, 2014, the results of this evaluation were shared at an IEP team meeting at which Green, Murillo and Amancio were present. *Id.* ¶ 46.

On or about August 7, 2014, Yales sent Franco a letter stating the District's position that J.V.'s physical safety was being appropriately addressed, and that it was unnecessary to replace his current aide. *Id.* ¶ 47. The letter also stated that the District had provided all incident reports that Franco had requested. *Id.* After this letter was sent, classroom aides were directed not to speak directly to Franco. *Id.* ¶ 48.

On or about October 2, 2014, when Franco picked up J.V. from school, Krivan told Franco that J.V. had lost a tooth that day. *Id.* ¶ 49. Krivan also told Franco that Markofski -- a health services assistant -- had examined J.V. and that there was still bleeding in his mouth. *Id.* Krivan gave Franco the tooth, which was cracked. *Id.* After Franco left San Antonio, Krivan called her and stated she had forgotten to tell Franco that J.V. had been restrained earlier that day. *Id.* ¶ 50. Franco asked what had occurred. Krivan said she did not know because she had been assisting another student at the time. *Id.* Krivan told Franco that there would be an incident report in J.V.'s backpack the following day. *Id.* Because no incident report was provided to her, Franco repeatedly contacted Krivan, Amancio, Green and Yales about it. *Id.* ¶ 51. On or about October 17, 2014, Franco met with Krivan, who told her that J.V. had not been restrained by his assigned behaviorial aide. *Id.* ¶ 52. When Franco asked who had restrained J.V., Krivan told her that all of the details were set forth in the written report, a copy of which Franco would soon receive. *Id.*

On or about October 20, 2014, Plaintiff J.V. came home with multiple bruises on his back. Franco texted pictures of this bruising to the District nurse. The nurse promised to follow up on the injuries, but no one could explain what caused them. *Id.* ¶ 53.

On or about October 21, 2014, Franco received the report from the October 2, 2014 incident. *Id.* ¶ 54. It was drafted by AST, and stated that two classroom aides[3] "held [J.V.'s] arms and legs down while area was cleared of students and chairs. Speech therapist instructed them to stop because they were using an incorrect CPI hold on student." *Id.*

After receiving the report, Franco requested a copy of all records from the health assistant. *Id.* ¶ 56. After she received them, Franco contacted Markofski and informed her that she had not documented that she saw J.V. on October 2, 2014. *Id.* Markofski stated that she had not done so because she had gone to the classroom where the incident occurred, instead of seeing J.V. in her office. *Id.* At Franco's request, Markofski added her contact with J.V. to the records. *Id.*

---

[3] In their Opposition, Plaintiffs argue that this is a reference to Soto and Garcia. However, the FAC does not expressly make that allegation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |


In November 2014, a mental health medication was prescribed for J.V. to address his anxiety. *Id.* ¶ 57.

4.      Allegations as to B.K.

From August 2013 to March 2015, Plaintiff B.K. attended Simons Middle School ("Simons") in a special education classroom designed exclusively for students with disabilities. FAC ¶ 59, Dkt. 28. Shields was B.K.'s classroom teacher. Through March 5, 2015, Petro was his classroom aide. *Id.* When B.K.'s mother, Brown, was first introduced to Petro, Shields told her that Petro "does not take any stuff from B.K." *Id.* ¶ 60.

Shortly after B.K. started middle school, Brown noticed a regression in B.K.'s skills, including his writing skills, as well as uncharacteristic behavior. *Id.* ¶ 61. Shields called Brown, up to several times per week, to notify her that her son began crying at school. *Id.* In addition, B.K. began having soiling incidents at school, but was able independently to use the bathroom at home. *Id.* The school began to contact Brown periodically to tell her that her son had scratches on his face and neck. *Id.* ¶ 62. Brown repeatedly requested documentation of these incidents, but did not receive any. *Id.*

In or about November 2014, Brown noticed that B.K. flinched and moved away from other people when they came close to him, as if he were anticipating them causing him pain. *Id.* ¶ 63. In or about December 2014, B.K. began to exclaim "Red Face!" if he thought he was in trouble or anticipated discipline. *Id.* On February 24, 2015, Brown raised concerns about this new behavior to the IEP Team, when Shields was present. *Id.* ¶ 64. Shields, the District and SELPA ignored these concerns and took no further action. *Id.*

On March 5, 2015, B.K. came home from school with a red mark on his face and a swollen knee. *Id.* ¶ 65. At 5 p.m., Goens, Simons' principal, called Brown and notified her that two students had reported that a classroom aide had pushed and slapped her son. *Id.* ¶ 65. Goens also told her that the police had been notified. *Id.* Goens did not provide any additional information regarding the incident. *Id.* ¶ 66. In a home-school communication log that Brown received that day, Shields wrote "No school tomorrow, have a great weekend." *Id.* Brown requested a copy of B.K.s' file, but Goens told her that the file had been lost and she would have to "make it up." *Id.* ¶ 67.

On March 17, 2015, Brown attended an IEP Team meeting and requested information regarding the March 5 incident. Shields, Goens and other District and SELPA staff told her that additional information could not be disclosed because there was a pending investigation. *Id.* ¶ 68. After the March 5 incident, B.K.'s behavior significantly changed. *Id.* ¶ 69. Shields, for the first time in the 2014-2015 school year, sent home reports that B.K. "was trying to hit staff" and that he was not keeping "his hands to himself." *Id.* Brown attempted to go to her son's school to observe his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|----------|--------------------------|------|------------------|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

behavior. Initially she was not permitted to go to the classroom, but was required to sit in the school office. *Id.*

Soon after these events, Brown removed her son from Simons. *Id.* Subsequently, Brown attended additional IEP Team meetings on April 20, 2015 and on June 4, 2015, during which she requested information about the March 5 incident. *Id.* ¶¶ 70, 71. Goens and Shields attended the April meeting and stated that they would "not respond to questions about the incident in an IEP meeting." *Id.* ¶ 70. Yales, Goens and Shields attended the June meeting and told Brown that they could not provide the requested information because a police investigation was pending. *Id.* ¶ 71.

On July 14, 2015, Brown requested records from the Pomona Police Department regarding the March 5 incident. She received them approximately one month later. *Id.* ¶ 72. The police report stated that on March 5 between 1:00 and 2:00 p.m., two general education students reported that as they passed the special education classroom, they saw Petro push B.K. against a wall and slap him in the face. *Id.* ¶ 73. They also reported that when Petro noticed them, she smiled. *Id.* Brown has not received any documentation from the District or SELPA regarding the March 5 incident. *Id.* ¶ 74.

Since the March 5 incident, mental health medication has been prescribed for, and administered to, B.K. for the first time in his life. *Id.* ¶ 75. He regularly wakes up at night and will not go back to sleep. The use of Benadryl to aid his sleep has been recommended. *Id.*

5.     Class Allegations

Plaintiffs seek to represent "all students with disabilities attending schools in the District since August 2013 who have been denied their right to full and equal access to, and use and enjoyment of, the facilities, programs, services and activities of [the District] because of abusive conduct towards children with disabilities." *Id.* ¶ 77.

**III.   Analysis**

A.     Legal Standard

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

    B.    Application

        1.    <u>Whether the Claims, Except the First and Second Claim, against the District, SELPA and Individual Defendants Sued in Their Official Capacities Are Barred by Eleventh Amendment Immunity</u>

            a)    Legal Standard

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The party asserting Eleventh Amendment immunity bears the burden of proof as to this defense. *See Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir.), *amended by* 127 F.3d 1135 (9th Cir. 1997); *ITSI TV Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993).

The Eleventh Amendment has been interpreted to "bar[] suits which seek either damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies." *A.A. v. Clovis Unified Sch. Dist.*, No. 1:13-CV-01043 AWI SM, 2014 WL 3488963, at *4 (E.D. Cal. July 14, 2014) (citing *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 957 n. 27 (9th Cir. 2002)). It also precludes an action brought in a federal court against states on the basis of alleged violations of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-25 (1984); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973-74 (9th Cir. 2004). States remain immune from suits brought in federal courts under state law even when the states have waived such immunity in their own courts. *See Riggle v. State of Cal.*, 577 F.2d 579, 585 (9th Cir. 1978).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

The Eleventh Amendment also bars damages actions against a state official who is sued in an official capacity. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). However, the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908) -- that the Eleventh Amendment does not bar suits against state officials in their official capacity for prospective declaratory or injunctive relief -- is a well-recognized exception to Eleventh Amendment immunity. *Id.* Furthermore, the Eleventh Amendment does not bar suits seeking damages against state officials for alleged conduct undertaken in a personal capacity. *Pena*, 976 F.2d at 472-73.

"Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Congress has not abrogated the State's Eleventh Amendment immunity with respect to § 1983. *Quern v. Jordan,* 440 U.S. 332, 345 (1979).

> b)   Application

> i.   District and SELPA

Defendants argue that California school districts are state agencies entitled to Eleventh Amendment immunity. Motion, Dkt. 37 at 9 (citing *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250-55 (9th Cir. 1992), *cert. denied*, 507 U.S. 919 (1993); *Stoner v. Santa Clara Ofc. Of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007) ("We have held that a California school district and county office of education are arms of the state for purposes of Eleventh Amendment sovereign immunity.")).

Defendants acknowledge that the Ninth Circuit has not yet determined whether SELPA is a state agency for purposes of the Eleventh Amendment, but note that at least one California district court has found that it is. *Id.* (citing *McElroy ex rel. McElroy v. Tracy Unified Sch. Dist.*, No. 2:07-CV-00086-MCE-EFB, 2008 WL 5045952, at *8 (E.D. Cal. Nov. 21, 2008) ("There is no legal rationale or policy distinction for treating a special education local plan area any differently than either a school district or a county office of education, both of which are unquestionably entitled to Eleventh Amendment immunity.")). At the hearing, Plaintiffs in effect conceded that the District and SELPA are entitled to Eleventh Amendment immunity with respect to the § 1983 claims, and that they would have to pursue the claims based on California law in the Los Angeles Superior Court.

Plaintiffs' concession, which was not made until the hearing, is appropriate. The District is a state agency entitled to Eleventh Amendment immunity. *Belanger*, 963 F.2d at 251. Congress has not abrogated the State's Eleventh Amendment immunity with respect to a claim brought under 42 U.S.C. § 1983 (*Quern*, 440 U.S. at 345; *C.W. v. Capistrano Unified School Dist.*, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

12–57315, 2015 WL 1566942, at *7 (9th Cir. Mar. 2, 2015) ("It is well-established that a school district cannot be sued for damages under § 1983.")) and Eleventh Amendment immunity has not been abrogated with respect to state law claims brought in federal court. *Pennhurst*, 465 U.S. at 106. For these reasons, the Motion is **GRANTED** with prejudice as to the 5th through 7th causes of action with respect to the District, and is **GRANTED** without prejudice to refiling in the Los Angeles Superior Court as to the 3d, 4th, 8th –13th and 15th causes of action as to the District.[4]

The result is the same as to SELPA. The FAC alleges that SELPA receives state funds (FAC ¶ 16, Dkt. 28) and performs the governmental function of providing special education services by employing those with the appropriate training who assume corresponding responsibilities (*Id.* ¶¶ 18, 20-22, 24-26 (SELPA employs public education personnel)). SELPA is alleged to be a "local government entity." *Id.* ¶ 16.

"There is no legal rationale or policy distinction for treating a special education local plan area any differently than either a school district or county office of education, both of which are unquestionably entitled to Eleventh Amendment immunity . . . . Like both a school district and county office of education, the SELPA also acts 'an agent of the state for the operation of the school system.'" *McElroy*, 2008 WL 5045952, at *8 (quoting *Eaglesmith*, 73 F.3d at 860).

Because SELPA is entitled to Eleventh Amendment immunity, the Motion is **GRANTED** with prejudice as to the 5th through 7th causes of action with respect to SELPA, and is **GRANTED** without prejudice to re-filing in the Los Angeles Superior Court as to the 3d, 4th, 8th –13th and 15th causes of action as to SELPA.[5]

        ii.      Individual Defendants Sued in their Official Capacities

The FAC alleges that Goens, Shields, Murillo, Krivan, Yales, Green, Amancio, Soto, Garcia, El Mahmoud and Markofski are employees of the District or SELPA. It then brings claims against each of them in their individual and official capacities; Defendant Martinez is sued in his official capacity only. FAC ¶¶ 17-26, Dkt. 28.

Defendants argue that Eleventh Amendment immunity extends to state officials who are sued in their official capacities. Motion, Dkt. 37 at 10-11 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office")). Furthermore, Defendants

---

[4] This Order does not address whether these claims are viable.
[5] This Order does not address whether these claims are viable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

argue that the individual defendants acting in their official capacity are immune from state law claims in federal court. Motion, Dkt. 37 at 11-12 (citing *Pennhurst,* 465 U.S. at 106; *Cholla Ready Mix,* 382 F.3d at 973).

Plaintiffs argue that the individual defendants sued in their individual capacities are not entitled to Eleventh Amendment immunity for the § 1983 claims, because Plaintiffs seek prospective relief. Opposition, Dkt. 42 at 11-12. They argue that they only seek damages against Defendants sued in their individual capacities. *Id.* at 12.

Plaintiffs may pursue federal claims for prospective relief against the individual Defendants in their official capacities. However, they may not seek damages against the individual Defendants in their official capacities, but may seek damages from Defendants sued in their personal capacities. *See Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotations omitted). The FAC does not make clear whether Plaintiff seeks damages only against the Defendants sued in their personal capacities. Consequently, the Motion is **GRANTED** with leave to amend as to the 5th, 6th and 7th claims. In any amended complaint, Plaintiff must state expressly that damages are not sought against the individual Defendants sued in their official capacities.

Furthermore, Plaintiffs may not pursue state law claims against the individual Defendants in their official capacities. *Pennhurst*, 465 U.S. at 106. Therefore, the Motion is **GRANTED** without prejudice to the refiling of these claims in the Los Angeles Superior Court as to the state law claims brought against the individual defendants in their official capacities.[6]

> 2.    Whether Defendants El Mahmoud, Soto, Garcia, Murillo, Krivan, Green, Yales, Amancio, Goens, and Shields are Entitled to Qualified Immunity for §1983 Claims and Whether Plaintiffs Fail to State a Claim for the § 1983 Causes of Action (5th, 6th and 7th Claims)

The FAC alleges that Petro, Goens, Shields, Murillo, Green, El Mahmoud, Soto, Garcia, Yales, Amancio, Krivan, the District, SELPA, and in his official capacity only, Martinez violated Plaintiffs' Fourth Amendment and due process and equal protection rights under the Fourteenth Amendment. Plaintiff brought corresponding claims pursuant to § 1983.

Defendants argue that individual defendants El Mahmoud, Soto, Garcia, Murillo, Krivan, Green, Yales, Amancio, Goens and Shields have qualified immunity for the § 1983 claims, *i.e.* the 5th,

---

[6] This Order does not address whether these claims are viable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

6th and 7th claims. Defendants also argue that the FAC fails to state a claim as to each of these causes of action.

> a)    Legal Standard

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This protection applies whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks omitted).

A two-step analysis is used to determine whether a person is entitled to qualified immunity. First, it must be determined "whether the officer violated a plaintiff's constitutional right." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). If that is established, the next step is to determine "whether the constitutional right was clearly established in light of the specific context of the case at the time of the events in question." *Id.* (internal quotation marks omitted). The two-step inquiry need not always proceed in this order. *Pearson*, 555 U.S at 236 ("[W]hile the sequence set forth [] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Thus, government officials may not be granted qualified immunity "on the ground that it was not clearly established at the time . . . that their conduct was unconstitutional," without a corresponding determination as to whether a constitutional right was indeed violated. *Id.* at 227, 234-35; *see also id.* at 237 ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.").

In light of these limitation, to present a viable claim,

> [t]he "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted under clearly established standards." *Saucier v. Katz,* 533 U.S. 194, 208 (2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

"To determine that the law was clearly established, we need not look to a case with identical or even 'materially similar' facts." *Serrano v. Francis,* 345 F.3d 1071, 1077 (9th Cir. 2003), *cert. denied,* 543 U.S. 825 (2004). "Rather, the 'standard is one of fair warning: where the contours of the right have been defined with sufficient specificity that a state official had fair warning that [his] conduct deprived a victim of his rights, [he] is not entitled to qualified immunity.'" *Serrano,* 345 F.3d at 1077 (quoting *Haugen v. Brosseau,* 339 F.3d 857, 873 (9th Cir. 2003)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

*W.A. ex rel S.A. v. Patterson Joint Unified Sch. Dist.*, No. CV F 10-1317 LJO SMS, 2011 WL 2925393, at *37 (E.D. Cal. July 18, 2011).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005).

To establish a claim under § 1983, a plaintiff must allege facts that support each of the following four elements: (i) a violation of constitutional or other federal rights; (ii) proximately caused; (iii) by the conduct of a person; (iv) acting under color of law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

> b)   Positions of the Parties

Defendants contend that individual Defendants El Mahmoud, Soto and Garcia have immunity as to the Section 1983 claims because each was "engaged in discretionary government functions at the time the alleged constitutional violations against J.V. occurred." Motion, Dkt. 37 at 14. Defendants assert that Plaintiffs did not allege that J.V.'s alleged restraint constituted "excessive and unreasonable corporal punishment of public school students" (*Id.* at 15 (quoting *Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1181-82 (9th Cir. 2007)) or sufficiently "shocks the conscience" to establish a due process violation. *Id.* at 16 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Defendants assert that J.V.'s behavioral intervention plan explicitly allowed staff to use certain physical restraint if J.V. were being unduly aggressive toward other students. *Id.* Defendants state that § 56521.2(a)(5) of the Cal. Educ. Code allows trained personnel to use the technique of immobilization of all four limbs in an emergency intervention. *Id.*  Furthermore, Defendants argue that Plaintiffs cannot assert a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

constitutional violation on the basis of "unexplained" injuries. *Id.* (citing *Preschooler II*, 479 F.3d at 1178). Defendants argue that J.V.'s injuries could have been self-inflicted given his aggressive behavior. *Id.* at 16-17.

Defendants further argue that Plaintiffs' allegations that they were abused because of their disabilities (FAC ¶¶133-34, Dkt. 28) fails to state an equal protection claim. *Id.* at 17. Defendants contend that, because disability is not a suspect class under the Equal Protection Clause, Plaintiffs must allege both that they were treated differently than others and that the difference in this treatment had no rational relationship to a legitimate state purpose. *Id.* at 17 n.1 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). Defendants argue that Plaintiffs have not alleged "that discrimination on the basis of disability was intentional, that J.V. was intentionally treated differently than similarly situated students with severe aggressive behavior, or that the actions taken to protect J.V. and other students in his classroom were without rational relationship to a legitimate state purpose." *Id.* at 17.

Defendants argue that any liability of Murillo, Krivan, Green and Amancio is based on supervision of their subordinates El Mahmoud, Garcia and Soto. They contend that these claims fail because there is no such liability. *Id.* at 18.

Defendants also argue that Goens, Shields and Yales are entitled to qualified immunity as to the claims made with respect to Plaintiff B.V. *Id.* at 19. Defendants argue that these three Defendants are included in this action because of their supervisory role in B.K.'s special education program. *Id.* Defendants argue that Plaintiffs have failed to plead sufficiently that these supervisors knew or should have reasonably known that Petro would violate B.K.'s constitutional rights. *Id.* at 19-20. Defendants note that Plaintiffs make no allegations regarding Petro's interactions with B.K. prior to March 5, 2015, from which Goens, Shields, or Yales could have been aware of possible abuse. Furthermore, they argue that the FAC concedes that, immediately after Goens was informed of this alleged incident, she reported it to the police. *Id.* at 20 (citing FAC ¶ 65, Dkt. 28).

Plaintiffs respond that they have properly alleged that Defendants violated their clearly established rights. Opposition, Dkt. 42 at 14-15 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law . . . . [A]t least where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated."); *Preschooler II*, 479 F.3d at 1181 ("By 2002–2003 when Preschooler II was allegedly abused, the right of public school students to be free from excessive force imposed by their teachers was uncontroverted."); *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) ("We agree that Doe's Fourth Amendment right to be free from an unreasonable seizure extends to seizures by or at the direction of school officials . . . . A seizure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

violates the Fourth Amendment if it is objectively unreasonable under the circumstances. In applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in light of the educational objectives [the school official] was trying to achieve.") (internal citations and quotations omitted).

Plaintiffs add that they allege that J.V.'s intervention plan only allowed staff to "apply physical blocking," and did not permit two adults to restrain him in such an aggressive manner that he lost a tooth. *Id.* at 16 (citing FAC ¶¶ 36, 49, Dkt. 28). They also argue that the California Education Code bans "[a]ny intervention that is designed to, or likely to, cause physical pain" or "[a]n intervention that is designed to subject, used to subject, or likely to subject, the individual to verbal abuse, ridicule, or humiliation, or that can be expected to cause excessive emotional trauma." *Id.* (quoting Cal. Educ. Code § 56521.2). They note that Defendants were warned by an independent evaluator that their behavioral intervention was inappropriate, but they disregarded this information and allowed aides to use physical force to punish J.V. *Id.* (citing FAC ¶¶ 45-47, Dkt. 28). Plaintiffs also contend that they properly stated an equal protection violation. *Id.* at 19 (citing *V.S. by & through Sisneros v. Oakland Unified Sch. Dist.*, No. 14-CV-05144-JST, 2015 WL 3463475, at *3 (N.D. Cal. May 28, 2015) (an allegation that a school district and its employees deliberately failed to protect a disabled student from a known assault on the school bus because she was unable to report the danger herself was sufficient to state a §1983 equal protection claim)).

As to Goens, Shields, Krivan, Yales, Amancio, Green and Murillo as supervisors, Plaintiffs argue that, although there is no *respondeat superior* liability under Section 1983, a supervisor is liable for the acts of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." *Id.* at 20 (quoting *Preschooler II*, 479 F.3d at 1182 (plaintiff sufficiently stated a claim against school officials for violations of the student's clearly-established constitutional rights where plaintiff "detail[ed] the allegations of abuse, the role of the School Officials, the knowledge and reporting duty of the officials, and their failure to report or take corrective action" and recognizing that allegations, if true, "demonstrated disregard of their responsibilities in hiring, training, supervising, disciplining and reporting abuses"); *id.* at 1183 (a person "subjects" another to the deprivation of a constitutional right, within the meaning of Section 1983, "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."); *OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012) (complaint stated claim against supervisors where "[t]hey stood superior to [Defendant] Martorello; they knew that Martorello [violated plaintiffs' constitutional rights]; and they did nothing."). Plaintiffs argue that "each Defendant failed to take corrective action, in response to repeated parental complaints and Dr. Charlop's independent evaluation, to prevent the abuse against J.V. and B.K." *Id.* at 24.

c)      Fourth Amendment Analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|----------|--------------------------|------|------------------|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

Plaintiffs allege that "Defendants' actions described herein constituted a seizure that was objectively unreasonable under the circumstances and objectively unreasonable in light of the educational objectives Defendants were trying to achieve, in violation of the Fourth Amendment" (FAC ¶ 120, Dkt. 28) and that Defendants Yales, Amancio, Goens, Shields, Murillo, Green and Krivan "are liable as supervisors because the actions described herein constituted culpable action or inaction in the training, supervision, and control of subordinates, acquiescence in the constitutional deprivation after a complaint was made, and showed a reckless or callous indifference to the rights of the Plaintiffs." *Id.* ¶ 122.

> The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV; *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir.1995); *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir.1994). Violation of the Fourth Amendment requires an intentional acquisition of physical control. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). A seizure "in the constitutional sense . . . occurs when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Doe v. Hawai'i Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). The ultimate test of reasonableness requires the court to balance the governmental interest that justifies the intrusion and the level of intrusion into the privacy of the individual. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir.1996).

*Garedakis v. Brentwood Union Sch. Dist.*, No. C 14-4799 PJH, 2015 WL 2453295, at *5 (N.D. Cal. May 22, 2015).

The alleged rights of J.V. and B.K. were clearly established. "[T]he right of a student to be free from excessive force at the hands of teachers employed by the state was clearly established as early as 1990." *Preschooler II.,* 479 F.3d at 1178 (quoting *Doe*, 334 F.3d at 910). *See also P.B. v. Koch*, 96 F.3d 1298, 1302–03 (9th Cir.1996) ("[E]xcess force by a [school official] against a student violate[s] the student's constitutional rights."). "There need not be a case dealing with these particular facts to find [Defendants'] conduct unreasonable." *Doe*, 334 F.3d at 910. The next question is whether the FAC has adequately alleged that each of these Defendants violated this clearly established right. In conducting that analysis

> the Court considers whether the conduct rises to the level of a violation of [the student's] Fourth Amendment right to be free from unreasonable seizures by the school officials . . . . "The consequences of a teacher's force against a student at school are generally analyzed under the 'reasonableness rubric of the Fourth Amendment[.]" *Preschooler II*, 479 F.3d at 1180. The Court determines "reasonableness" by "careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotes omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

In the school context, the reasonableness of a seizure must be considered in light of the educational objectives trying to be achieved. *Doe v. State of Hawaii Dep't of Ed.*, 334 F.3d 906, 909 (9th Cir. 2003) . . . . In its evaluation, the Court must "look objectively at the specific circumstances of the school and child." *Preschooler II*, 479 F.3d at 1181. The Court considers the reasonableness of the school official's actions "in light of the age and sex of the student and the nature of the infraction." *Id.*

To consider the reasonableness of the use of restraints, the Court considers the type of restraints used, the circumstances surround[ing] the use of restraints, and the specific circumstances of the school and child.

*W.A.*, 2011 WL 2925393, at *37-*38.

In general, such claims are considered under the Fourth Amendment, rather than under the due process clause of the Fourteenth Amendment. *Preschooler II*, 479 F.3d at 1182 ("Following *Ingraham*, the Supreme Court determined that allegations of excessive force in § 1983 actions should be analyzed under a more specific constitutional provision, rather than through generalized notions of substantive due process. As a consequence, we now typically analyze excessive force allegations against public school students under the Fourth Amendment.") (internal citations removed) (citing *Doe*, 334 F.3d at 908, 909 "[We] have recognized the movement away from substantive due process and toward the Fourth Amendment . . . . It is clear that the Fourth Amendment applies in the school environment.")). *See also Garedakis*, 2015 WL 2453295, at *5–6 ("'The consequences of a teacher's force against a student at school are generally analyzed under . . . the Fourth Amendment, although historically courts applied substantive due process analysis . . . .' *Preschooler II* . . ., 479 F.3d [at] 1180 . . . ; *see also Doe*, 334 F.3d at 909. In *Doe*, the Ninth Circuit confirmed that a student's Fourth Amendment right to be free from an unreasonable seizure 'extends to seizures by or at the direction of school officials.' *Id.* (citation and quotation omitted). However, the court also recognized that a school official could, in theory, use excessive force without actually searching or seizing a student. If that were to occur, the claim should be analyzed under the Fourteenth Amendment's Due Process Clause. *Id.* Four years later, in *Preschooler II*, the Ninth Circuit reaffirmed that while a claim for excessive force should in the school context be brought under the Fourth Amendment, where there are no allegations of search or seizure, the claim should be brought as a substantive due process claim under the Fourteenth Amendment. *See Preschooler II*, 479 F.3d at 1181 n.5. Claims of excessive force under the Fourteenth Amendment require allegations of 'egregious . . . conduct in the form of excessive or brutal use of physical force' that rises to the level of a violation of due process. *See White v. Roper*, 901 F.2d 1501, 1507 (9th Cir.1990).").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

i.      J.V.

Plaintiffs cannot state a constitutional violation as to J.V.'s alleged unexplained injuries. Therefore, the Motion is **GRANTED** without prejudice as to his Fourth Amendment claims on that basis. *Preschooler II*, 479 F.3d at 1181 ("[U]nexplained bruises and scratches, without more, do not rise to the level of a recognized constitutional violation."); *Garedakis*, 2015 WL 2453295, at *7 ("The SAC alleges that MG came home with 'red marks' on his arms, but there is no allegation that the red marks were caused by something Holder did (as opposed to the actions of someone else in the classroom).").

The outcome is different as to certain claims against Soto and Garcia.  The FAC alleges that, on or about October 2, 2014, Soto and Garcia "intentionally and unlawfully restrained Plaintiff for J.V. for no pedagogical purpose" (FAC ¶ 24, Dkt. 28) and that these aides apparently "held [J.V.'s] arms and legs down while area was cleared of students and chairs. Speech therapist instructed them to stop because they were using an incorrect CPI hold on student." *Id.* ¶ 54. Because the FAC alleges that J.V. was restrained, he was not able to leave. *J.C.R. v. City & Cty. of San Francisco*, No. 14-CV-03918 NC, 2015 WL 5316249, at *5 (N.D. Cal. Sept. 11, 2015) ("A seizure under the Fourth Amendment exists when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave.").

Although the alleged force used by Soto and Garcia is not as severe as the seizures alleged in *Preschooler II* or *Doe*, the allegations of the FAC are sufficient to state a claim. They aver that the restraint used on J.V. was more forceful than authorized by California law and J.V.'s IEP. *See Preschooler II*, 479 F.3d at 1180-1181 ("The teacher's seizure of Preschooler II and her alleged slapping, forced participation in self-beating and slamming were unreasonable in light of the child's age and disability and the context of the events. Preschooler II posed no danger to anyone nor was he disruptive in the classroom. At such a young age and suffering from significant and serious disabilities, autism as well as tuberous sclerosis, Preschooler II was even more vulnerable than the average pre-school child . . . . Unlike the teacher in *Doe* who abused the student in a single and relatively short incident, 334 F.3d at 908, LiSanti's abusive conduct allegedly occurred over a period of months. Preschooler II's mother alleges that the full extent of the abuse is not known, and Preschooler II cannot be counted on to report it since he was so young at the time and is non-verbal as a result of his autism . . . . [T]here was no need here for the claimed excessive force."); *Hawaii Dep't of Educ.*, 334 F.3d at 909–10 ("Being held to a tree with tape for five minutes [as punishment] was such a restraint on Doe's liberty, and constituted a seizure within the meaning of the Fourth Amendment's prohibition against unreasonable search and seizure . . . . At the time that [the defendant] taped him to the tree, Doe's only offense had been 'horsing around' and refusing to stand still. There is no indication that Doe was fighting or that he posed a danger to other students. Doe was eight years old. Taping his head to a tree for five minutes was so intrusive that a fifth grader observed it was inappropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

There is sufficient evidence for a fact finder to conclude that [the defendant's] conduct was objectively unreasonable in violation of the Fourth Amendment.").

The FAC fails to state a claim against El Mahmoud. J.V. alleges that El Mahmoud "participated substantially in the events described herein against Plaintiff J.V." (FAC ¶ 25, Dkt. 28) and that "When Ms. Franco asked J.V. how he got hurt, J.V. sometimes replied 'Mr. Brian,' the name of one of the classroom aides [El Mahmoud]. Ms. Franco attempted to get further information from J.V., but given his limited communication abilities, he could not explain." *Id.* ¶ 40. The FAC does not allege that El Mahmoud, a classroom aide, had any supervisory responsibilities over Soto and Garcia. Therefore, there is not a viable claim of an unreasonable seizure by El Mahmoud. For these reasons, the Motion is **GRANTED** as to El Mahmoud for the Fourth Amendment claims without prejudice, *i.e.,* with leave to amend, if there is a good faith basis to allege that El Mahmoud used excessive force against Plaintiff J.V.

The FAC states a claim by J.V. against Principal Amancio; special education teachers Murillo and Krivan; Director of Special Education Yales; and special education coordinator Green as to their alleged actions in failing to supervise Soto and Garcia and failure to take action to prevent their alleged abuse of J.V.

> Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). At this early stage of the proceedings, Preschooler II does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law.

*Preschooler II,* 479 F.3d at 1182 (citing *Hydrick v. Hunter,* 466 F.3d 676, 689–90 (9th Cir. 2006) (denying policy-making officials qualified immunity at the motion to dismiss stage based on inferences that the officials played an instrumental role in the alleged abuses)). *See also id.* at 1183 ("It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.' *Menotti v. City of Seattle,* 409 F.3d 1113, 1149 (9th Cir.2005) (quoting *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991)). We have also held that a person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.' *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (citing *Sims v. Adams,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

537 F.2d 829 (5th Cir.1976)). The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms. *Id.*").

The FAC adequately alleges that those acting on behalf of J.V. informed these Defendants of the possibility that J.V. was being abused, and that Defendants failed to take any corresponding action to prevent it. *See* FAC ¶¶ 41, 42, 44, Dkt. 28. Franco regularly attempted to discuss J.V.'s injuries with Murillo, Krivan, Amancio, Soto, El Mahmoud and Garcia; Defendants suggested that J.V. was merely "clumsy" without further explanation. When her attempts were unsuccessful, Franco directly contacted SELPA administrators, Patti Adams, Defendant Green or Defendant Yales to discuss her concerns. Franco continued to raise her concerns at multiple IEP team meetings where Defendants Murillo, Krivan, Amancio, Yales and Green were present.

Similarly, the allegation that at J.V.'s 2014 annual IEP, Franco presented a letter with parallel information as to her concerns regarding J.V.'s physical safety and behavior, Defendants' lack of communication, their delay in making an appropriate intervention and their failure to provide incident reports that Franco had requested also provides support for Plaintiffs' claim. *Id.* ¶¶ 45-46.

It is also alleged that Franco requested an assessment by an outside evaluator, Dr. Majorie Charlop. On April 20, 2014, Charlop provided Defendants with a "Functional Behavior Analysis Assessment Report," which concluded that the behavior intervention program was applied in a way that reinforced J.V.'s noncompliant behavior, thereby escalating the behavioral compliance and response issues. On or about September 30, 2014, the results of this evaluation were shared at an IEP team meeting attended by Green, Murillo and Amancio.

These allegations are sufficient under *Preschooler II*, 479 F.3d at 1178-79, 1183 ("Preschooler II alleges that the School Officials were on notice of the violent and unlawful conduct ongoing in the classroom before and during the time Preschooler II was abused, and that they failed to act to prevent further harm to him . . . . The Amended Complaint details the allegations of abuse, the role of the School Officials, the knowledge and reporting duty of the officials, and their failure to report or take corrective action. Preschooler II alleges that the School Officials ratified a custom that subjected Preschooler II to an educational environment in which he was physically and emotionally abused, in part by failing to train special education teachers, or to hire qualified individuals to work in special education classrooms. He also alleges that the officials abdicated their duty to report and discipline LiSanti when they first became aware of the alleged abuses. Whether Preschooler II ultimately will be able to establish the claimed knowledge or 'blind eye' acquiescence in the alleged abuse is uncertain, but given the liberal requirements of notice pleading, no further specificity is expected of the complaint. Under the Ninth Circuit's limited supervisory liability doctrine, Preschooler II's allegations against the supervisory school official defendants constitute a violation of constitutional law sufficient to satisfy step one of the *Saucier*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

analysis . . . . The alleged acts and omissions on the part of the School Officials, if proven true, establish that they are liable for the violation of Preschooler II's clearly established constitutional rights because they demonstrated disregard of their responsibilities in hiring, training, supervising, disciplining and reporting abuses committed by LiSanti. The physical abuse allegations here do not concern IDEA violations or some obscure and abstract legal requirements. Instead, a reasonable special education school official would know that LiSanti's alleged abusive conduct, and the failure of other special education officials to address that conduct, are grounds for liability. For these reasons the district court properly denied qualified immunity to the School Officials.").

ii.      B.K.

As with J.V., Plaintiffs have not stated a claim based on B.K.'s unexplained injuries, Therefore, the Motion is **GRANTED** without prejudice as to the Fourth Amendment claims on that basis. *Preschooler II*, 479 F.3d at 1181 ("[U]nexplained bruises and scratches, without more, do not rise to the level of a recognized constitutional violation.").

The result is different as to the claims alleged against special education teacher Shields for the alleged failure to supervise Petro. This allegedly resulted in Petro pushing B.K. against a wall and slapping him in the face on March 5, 2015. FAC ¶¶ 65, 73, Dkt. 28. Plaintiffs allege that Brown informed B.K.'s IEP team, including Shields, on February 24, 2015 of B.K's new, uncharacteristic behavior, and that it worried her. *Id.* ¶ 64. the FAC sufficiently alleges that Shields failed to take corrective action. There are no parallel allegations as to notice to, and a later failure to act, by Principal Goens. Therefore, the Motion is **DENIED** as to this claim against Shields, but **GRANTED** without prejudice against Goens to the extent that Plaintiffs can amend the Complaint to state a good-faith allegation that Goens had sufficient notice prior to the March 5 incident to support such a claim.

d)      Fourteenth Amendment Analysis

The FAC alleges that "Defendants' actions described herein constituted egregious conduct in the form of excessive or brutal use of physical force in violation of Plaintiffs' Substantive Due Process rights under the Due Process Clause of the Fourteenth Amendment."  FAC ¶¶ 126-27, Dkt. 28. It also makes claims based on supervisory liability of Yales, Amancio, Goens, Shields, Murillo, Green and Krivan "because the actions described herein constituted culpable action or inaction in the training, supervision, and control of subordinates, acquiescence in the constitutional deprivation after a complaint was made, and showed a reckless or callous indifference to the rights of the Plaintiffs." *Id.* ¶ 129.

In light of *Ingraham* and *Preschooler II*, these claims are more appropriately brought under the Fourth Amendment. *Preschooler II*, 479 F.3d 1175, 1182 (9th Cir. 2007) ("Following *Ingraham,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

the Supreme Court determined that allegations of excessive force in § 1983 actions should be analyzed under a more specific constitutional provision, rather than through generalized notions of substantive due process. As a consequence, we now typically analyze excessive force allegations against public school students under the Fourth Amendment.") (internal citations removed) (citing *Doe*, 334 F.3d at 908, 909 ("[We] have recognized the movement away from substantive due process and toward the Fourth Amendment . . . . It is clear that the Fourth Amendment applies in the school environment."). For these reasons, the Motion is **GRANTED** with prejudice as to the Fourteenth Amendment substantive due process claims, which may be pursued solely under the Fourth Amendment.

> e)      Equal Protection Analysis

The FAC alleges that Defendants violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment "in that Plaintiffs, who are students with disabilities, are either not provided programs, services, and activities that are provided to non-disabled students, or are provided programs, services, and activities that are not equal to, and are inferior to, the services provided to students are not physically disabled" and "in that Plaintiff students were abused and continue to be exposed to potential abuse because of their disabilities, which amounts to disability discrimination." FAC ¶¶ 133-34, Dkt. 28. Plaintiffs allege liability as to El Mahmoud, Soto, Garcia, and Petro, and supervisory liability as to Yales, Amancio, Goens, Shields, Murillo, Green and Krivan. *Id.* ¶ 136. To state such a claim,

> [P]laintiff [must] allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336 (1989) . . . . "'[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co.,* 260 U.S. at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352 (1918)).

*Vill. of Willowbrook v. Olech*, 528 U.S. at 564–65 (2000).

As another district court explained:

> To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan,* 705 F.3d 1021, 1030 (9th Cir.2013). "[T]he disabled do not constitute a suspect class for equal protection purposes." *Lee v. City of Los Angeles,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|----------|--------------------------|------|------------------|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

250 F.3d 668, 687 (9th Cir.2001) (internal quotation marks omitted). Accordingly, Plaintiff must allege that similarly situated individuals were intentionally treated differently without rational relationship to a legitimate state purpose. *Id.*; *see also Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

*V.S. by & through Sisneros v. Oakland Unified Sch. Dist.,* No. 14-CV-05144-JST, 2015 WL 3463475, at *3 (N.D. Cal. May 28, 2015).

i.      J.V.

The Motion is **GRANTED** without prejudice as to the equal protection claims brought by J.V. The allegations of the FAC, if established, would not show that Soto and Garcia lacked a rational basis for restraining J.V. Thus, it does not dispute J.V.'s prior, aggressive behavior and that the use of restraints was permitted by his IEP. Moreover, as discussed above, the allegations against El Mahmoud are insufficient to state a claim for a constitutional violation. Therefore, there is not a sufficient basis to show intentional discrimination against J.V. on the basis of his disability. Moreover, Plaintiffs have not shown that the Defendants supervising Soto, Garcia, and El Mahmoud who allegedly failed to prevent J.V.'s abuse intentionally treated J.V. differently because of his disability.

ii.      B.K.

The Motion is also **GRANTED** without prejudice as to the equal protection claim brought by B.K. The FAC alleges that neither B.K.'s IEP nor California law permitted Petro to slap B.K. or push him against a wall. However, Plaintiffs have not pleaded that the Defendants supervising Petro who allegedly failed to prevent B.K.'s abuse intentionally treated B.K. differently due to his disability.

3.      Whether Individual Defendants are Entitled to Dismissal for Causes of Action 3, 8-13 and 15 for Failure to State A Claim

For the reasons stated above, *§* III(B)(1)(b)(i), *supra,* the Motion is granted without prejudice to refiling in the Los Angeles Superior Court as to the state law claims brought against the District and SELPA on Eleventh Amendment grounds. Petro does not move to dismiss.

Defendants move to dismiss the state law claims against the Individual Defendants based on failure to state a claim from which relief may be granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

a)      Third Claim: Unruh Act

Plaintiffs argue that Defendants have violated and continue to violate this Act because

Plaintiffs, who are students with disabilities, are either not provided programs, services, and activities that are provided to non-disabled students, or are provided programs, services, and activities that are not equal to, and are inferior to, the services provided to students that are not physically disabled. Plaintiffs in fact were abused because of their disabilities, which amounts to disability discrimination.

FAC ¶ 105, Dkt. 28. Plaintiffs further allege that Defendants have violated the Unruh Act by violating the ADA. *Id.* ¶ 107.

(1)      Legal Standard

Cal. Civ. Code § 51(b) provides that

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 52(a) provides that

Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

To prevail on [a] disability discrimination claim under the Unruh Civil Rights Act, [a] plaintiff must establish that (1) [s]he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [her] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|----------|--------------------------|------|------------------|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

*Wilkins-Jones v. Cty. of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012) (quoting *Johnson v. Beahm,* No. 2:11–cv–0294–MCE–JFM, 2011 WL 5508893, at *4 (E.D.Cal. Nov. 8, 2011)).

A violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*, constitutes a violation of the Unruh Act (Cal. Civ. Code § 51(f)) and Plaintiff need not prove intentional discrimination where the Unruh Act violation rests on an underlying violation of the ADA. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664-65 (2009) ("Although we held in *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175 (1991) that proof of intentional discrimination was necessary to establish a violation of the Unruh Civil Rights Act, the Legislature subsequently added subdivision (f) to Civil Code section 51, specifying that '[a] violation of the right of any individual under the Americans with Disabilities Act of 1990' (ADA) -- which does not necessarily require a plaintiff to show intentional discrimination -- 'shall also constitute a violation of this section.'").

(2)    Application

Defendants argue that Plaintiffs do not assert an ADA claim against any Individual Defendants, because an ADA Title II claim can only be brought against a public entity. Defendants argue that Plaintiffs must allege facts showing that individual Defendants had intentionally discriminated, and that the FAC does not do so. Plaintiffs respond that they do not have to allege or prove intentional discrimination, because their claims pursuant to the Unruh Act are premised on violations of the ADA.

Plaintiffs have not stated an ADA claim against the Individual Defendants. Therefore, the basis for the alleged liability pursuant to the Unruh Act fails. For the reasons stated above, the FAC does not state a claim for intentional discrimination by Defendants on the basis of Plaintiffs' disability. § III(B)(2)(e)), *supra*. Therefore, the Motion is **GRANTED** without prejudice as to this claim.

b)    Eighth Claim: False Imprisonment

(1)    Legal Standard

The tort of false imprisonment is the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994) (internal citations omitted). The only mental state required "to be shown to prove false imprisonment is the intent to confine, or to create a similar intrusion." *Id.* at 716. Restraint may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers, or by means of any other form of unreasonable duress. *Id.* at 715. A plaintiff may prove false imprisonment by demonstrating actual knowledge that the imprisonment was illegal or by showing that a reasonable person would have the duty to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

investigate the validity of the imprisonment. *Sullivan v. Cty. of L.A.*, 12 Cal.3d 710, 719 (1974) (en banc). If a public employee is liable for false imprisonment, such liability is attributable to his or her employer under Cal. Gov. Code § 815.2. *Id.*

(2)    Application

The claim of false imprisonment is asserted against Soto, Garcia, the District and SELPA. The FAC alleges that on October 2, 2014 "two classroom aides held [J.V.'s] arms and legs down while area was cleared of students and chairs. Speech therapist instructed them to stop because they were using an incorrect CPI hold on student." FAC ¶ 52, Dkt. 28. The FAC also alleges that "Defendants SOTO and GARCIA intentionally and unlawfully exercised force or the implied threat of force to restrain or confine Plaintiffs when they committed the acts described herein" and that "[t]he unlawful restraint of J.V. lasted for an appreciable amount of time." *Id.* ¶¶ 140-41.

In the Motion, Defendants argue that Plaintiffs do not clearly plead that the "two classroom aides" who used "an incorrect CPI hold" on J.V. are Soto and Garcia. Motion, Dkt. 37 at 24 (citing FAC ¶¶ 24, 54, 55, Dkt. 28)). Defendants further argue that a claim of false imprisonment is dependent on a showing that the detention was "without lawful privilege." *Id.* at 24-25. They argue that the FAC does not show the absence of lawful privilege, because Plaintiffs allege that J.V.'s intervention plan permitted restraint. *Id.* at 25. Plaintiffs respond that Soto and Garcia were not authorized by California law or the IEP to apply an "*incorrect* CPI hold". FAC ¶ 54, Dkt. 28 (emphasis added).

The FAC adequately states a claim as to Soto and Garcia, because it alleged that both "intentionally and unlawfully restrained Plaintiff J.V. for no pedagogical purpose." FAC ¶ 24, Dkt. 28. Although the FAC concedes that J.V.'s IEP authorized J.V. to be restrained by "physical blocking" if J.V. were aggressive towards students or staff, it also alleges that, because the restraint of J.V. at issue was improper, it was not authorized by the IEP or California law. FAC ¶ 36, Dkt. 38.

For the foregoing reasons, the Motion is **DENIED** with respect to this claim.

c)    Ninth Claim: Battery

(1)    Legal Standard

To plead battery, a plaintiff must allege that: "(1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|----------|--------------------------|------|------------------|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

person in plaintiff's position would have been offended by the touching." *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 669 (2013), *as modified on denial of reh'g* (Jan. 28, 2013).

(2)     Application

The FAC asserts a cause of action for battery against Petro, El Mahmoud, Soto, Garcia, the District and SELPA. Defendants argue that any restraint of J.V. by Soto and Garcia was lawful and permitted by his IEP. Motion, Dkt. 37 at 25 (citing *Austin B. v. Escondido Union Sch. Dist.,* 149 Cal.App.4th 860, 873-875 (Cal. Ct. App. 2007)). They also argue that the FAC contains no allegations of facts that would show that El Mahmoud committed a battery.

The claim against Soto and Garcia is adequately pleaded. As stated earlier, it alleges that each of these Defendants restrained J.V. by an improper means, and was told by a speech therapist to stop because they were using an incorrect CPI hold. FAC ¶¶ 52, 140-41, Dkt. 28. The FAC also alleges that such a restraint was neither anticipated nor authorized by J.V.'s IEP. Therefore, the Motion is **DENIED** as to Soto and Garcia.

The potentially relevant allegation as to the conduct of El Mahmoud is that J.V. identified him as someone who hurt him. *Id.* ¶ 40 ("When Ms. Franco asked J.V. how he got hurt, J.V. sometimes replied 'Mr. Brian,' the name of one of the classroom aides. Ms. Franco attempted to get further information from J.V., but given his limited communication abilities, he could not explain."). This is insufficient to state a claim against El Mahmoud. Therefore, the Motion is **GRANTED** without prejudice as to El Mahmoud.

d)     Tenth Claim: Assault

(1)     Legal Standard

The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm.

*Yun Hee So*, 212 Cal. App. 4th at 668-69.

(2)     Application

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

The FAC asserts this cause of action against Petro, El Mahmoud, Soto, Garcia, the District and SELPA. FAC, Dkt. 28 at 32.

For the reasons stated earlier, *see* § III(B)(3)(c), *supra*, the FAC adequately alleges this claim against Soto and Garcia, but not as to El Mahmoud. Therefore, the Motion is **DENIED** as to Soto and Garcia, but **GRANTED** without prejudice as to El Mahmoud.

e)  Eleventh Claim: Intentional Infliction of Emotional Distress ("IIED")

(1)  Legal Standard

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

Conduct is outrageous if it is "so extreme "as to exceed all bounds of that usually tolerated in a civilized community." *Id.* "Only emotional distress of such substantial quantity or enduring quality that an individual in civilized society should not be expected to endure it constitutes severe emotional distress." *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1227, 44 Cal. Rptr. 2d 197 (1995) (internal citations and quotations removed). Thus, "[t]he California Supreme Court has set a 'high bar' for what can constitute severe distress." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376 (2010) (quoting *Hughes v. Pair* 46 Cal.4th 1035, 1051 (2009)).

(2)  Application

The FAC asserts this claim against Petro, El Mahmoud, Soto, Garcia, the District, and SELPA. FAC, Dkt. 28 at 33. The FAC alleges that, as a result of the events discussed earlier, J.V. suffered severe emotional distress and was placed on mental health medication to address his anxiety.  FAC ¶¶ 57, 171, Dkt. 28.

A physical symptom of anxiety is not a prerequisite for starting a claim for IIED claim under California law. *Hailey v. California Physicians' Serv.*, 158 Cal. App. 4th 452 (2007), as modified on denial of reh'g (Jan. 22, 2008). However, anxiety alone is not generally a sufficient basis to state an IIED claim. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (applying California law and finding that "[a]nxiety, sleeplessness, upset stomach, [and] sometimes muscle twitches" do not constitute severe emotional distress); *Hughes*, 46 Cal. 4th at 1051 ("plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of defendant's comments to her on the telephone and at the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

museum on June 27, 2005, do not comprise emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.") (internal quotations removed); *Wong*, 189 Cal. App. 4th at 1377 (granting anti-SLAPP motion where the defendant stated an online posting "was very emotionally upsetting to me, and has caused me to lose sleep, have stomach upset and generalized anxiety.").

Here, the FAC alleges that J.V. sought professional treatment and was given medications to address his anxiety. *C.f. de la Cerra Frances v. de Anda*, 224 F. App'x 637, 639 (9th Cir. 2007) (upholding summary judgment on IIED claim where "Plaintiff experienced only such symptoms as insomnia, hopelessness, and worry about personal safety, did not seek professional treatment, and took no prescription medication."); *Girard v. Ball,* 125 Cal.App.3d 772, 788 (1981) (general allegations that plaintiff "couldn't sleep-anxiety symptoms-nervous" were insufficient to establish "extreme emotional distress," and noting that the plaintiff "sought no medical treatment for his condition").

J.V. is a young minor who suffered severe anxiety for which he sought medical treatment and received prescription medication. At the pleading stage, this is sufficient to state a claim as to Soto and Garcia. *See* § (III)(B)(3)(c), *supra.* It is not sufficient to state one against El Mahmoud. For these reasons, the Motion is **DENIED** as to Soto and Garcia, but **GRANTED** without prejudice as to El Mahmoud.

> f)      Twelfth Claim: Negligent Supervision and Thirteenth Claim: Negligence

> (1)      Legal Standard

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cty. of San Diego,* 57 Cal. 4th 622, 629 (2013) (internal citations omitted). Liability for negligent supervision "may be appropriate if an employer has reason to know that an employee is likely, because of his or her traits, to harm others in performance of her duties, and that employee does in fact cause harm to a third person." *Turner v. Cty. of Los Angeles*, No. CV 13-4149 CAS VBKX, 2013 WL 5230663, at *6 (C.D. Cal. Sept. 16, 2013) (citing *Evan F. v. Hughson United Methodist Church,* 8 Cal.App.4th 828, 836 (1992)).

> (2)      Application

The FAC alleges negligent supervision by all Defendants. FAC ¶¶ 180-193, Dkt. 28. It alleges that "Defendants had a legal duty to exercise reasonable care in supervising 'special needs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

students in its charge pursuant to California Education Code section 44807 and may be held liable for injuries proximately caused by the failure to exercise such care." *Id.* ¶ 181.

Defendants argue that there are no allegations sufficient to support a finding that any employer or supervisor Defendant should have known that Soto, Garcia or Petro would harm Plaintiffs in the performance of their duties absent added supervision. Motion, Dkt. 37 at 26. Plaintiffs respond that Defendants "were warned directly and repeatedly by Plaintiffs' mothers and an independent evaluator; but ignored their concerns." Opposition, Dkt. 42 at 30. As to J.V., they argue that Defendants "breached their common law and statutory duties to Plaintiffs, including their supervisory duties created under California Education Code sections 44807 and 44808 by repeatedly refusing to provide information to concerned mothers of abused children, failing to heed Dr. Charlop's well-founded warnings about changes to J.V.'s behavior plan, and failing to document and retain files relating to abuse" *Id.* (citing FAC ¶¶ 36-47, 55, 67, Dkt. 28).

Plaintiffs argue that "Defendants Petro, Goens, Yales, and Shields violated their statutory duties to B.K., under California Penal Code section 11166, which required them to report any knowledge of a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect to the agency immediately or as soon as is practically possible by telephone *and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow up report thereof within 36 hours of receiving the information concerning the incident*' and "breached their statutory duty under California Penal Code section 11165.4 which prohibits 'unlawful corporal punishment or injury' against a child, defined as 'any cruel or inhuman corporal punishment or injury resulting in a traumatic condition.'" *Id.* at 30-31 (emphasis in original). Defendants respond that §11166 does not impose a mandatory duty to supervise, and cannot be the basis of a negligent supervision claim. *Id.* at 14.

Cal. Educ. Code § 44807 provides:

> Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess. A teacher, vice principal, principal, or any other certificated employee of a school district, shall not be subject to criminal prosecution or criminal penalties for the exercise, during the performance of his duties, of the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning.

The FAC also advances a negligence claim against all Defendants. FAC ¶¶ 194- 204, Dkt. 28. It alleges that "California law has long imposed on school authorities a duty to supervise at all times the conduct of children on school grounds and to enforce those rules and regulations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

necessary for their protection" and "to provide Plaintiffs with a learning environment free from abuse." *Id.* ¶¶ 195-96, 199-200 (citing Cal. Gov. Code §§ 815.2, 820).

The FAC adequately states claims for negligent supervision and negligence. *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 865–66, 270 P.3d 699, 701–02 (2012) is instructive. There, a negligent supervision claim was sufficient where

> C.A., a minor, sued his public high school guidance counselor and the school district for damages arising out of sexual harassment and abuse by the counselor. The trial court sustained the school district's demurrer, and the Court of Appeal affirmed. On review, the question presented is whether the district may be found vicariously liable for the acts of its employees (Gov. Code, § 815.2)—not for the acts of the counselor, which were outside the scope of her employment (see *John R. v. Oakland Unified School Dist.*, 48 Cal.3d 438, 441, 451–452 (1989)), but for the negligence of supervisory or administrative personnel who allegedly knew, or should have known, of the counselor's propensities and nevertheless hired, retained and inadequately supervised her. We conclude plaintiff's theory of vicarious liability for negligent hiring, retention and supervision is a legally viable one. Ample case authority establishes that school personnel owe students under their supervision a protective duty of ordinary care, for breach of which the school district may be held vicariously liable. (See, e.g., *Dailey v. Los Angeles Unified Sch. Dist.*, 2 Cal.3d 741, 747 (1970); *Leger v. Stockton Unified School Dist.*, 202 Cal.App.3d 1448, 1458–1461 (1988)). If a supervisory or administrative employee of the school district is proven to have breached that duty by negligently exposing plaintiff to a foreseeable danger of molestation by his guidance counselor, resulting in his injuries, and assuming no immunity provision applies, liability falls on the school district under section 815.2.

*Id.* at 865–66.

The allegations here are similar. Therefore, the Motion is **DENIED** as to these claims.

> g)     Fifteenth Claim: California Constitution Article 1, Section 7(a) & Article IV, Section 16(a)

This claim is brought against all Defendants. FAC, Dkt. 28 at 36.

> (1)     <u>Legal Standard</u>

"The federal guaranty of equal protection and California's protection of the same right are substantially equivalent and are analyzed in a similar fashion." *Landau v. Superior Court*, 81 Cal. App. 4th 191 (1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

(2)    Application

Because the FAC does not state a federal equal protection claim, *see* § (III)(B)(2)(b)(4), *supra,* this parallel claim also fails. Therefore, the Motion is **GRANTED** without prejudice with respect to this claim.

**IV.**    **Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED IN PART AND DENIED IN PART**. An amended complaint shall be filed on or before November 10, 2016.

**IT IS SO ORDERED.**

_____    :    _____

Initials of Preparer    ak