UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE MOTION FOR CLASS CERTIFICATION PURSUANT TO FRCP 23(b)(2) (DKT. 63)

I. **Introduction**

Plaintiffs J.V. and B.K., through their guardians ad litem, Anabel Franco and Cynthia Brown respectively, brought this putative class action on behalf of themselves and all other similarly situated students in the Pomona Unified School District ("PUSD" or the "District"). Complaint, Dkt. 1. The Complaint is brought against the following defendants: the District, Pomona Special Education Local Planning Area ("SELPA"), Ana Petro, Christine Goens, Kameron Shields, Beatriz Krivan, Jennifer Yales, Selene Amancio, Brian El Mahmoud, Daniella Soto, Mary Garcia, Cindy Green, Elaine Markofski, Superintendent Richard Martinez in his official capacity only and Dolores Murillo (collectively, "Defendants").

The Plaintiffs filed a First Amended Complaint ("FAC" (Dkt. 28)), which defines the proposed class in the following terms:

> [A]ll students with disabilities attending school in Pomona Unified School District since August 2013 who have been denied their right to full and equal access to, and use and enjoyment of, the facilities, programs, services, and activities of the Pomona Unified School District because of abusive conduct towards children with disabilities.

*Id.* at ¶ 77.

J.V. is an elementary school student, and B.K. is a middle-school student. Each has autism and has received special education services from the District. FAC, ¶¶ 33, 59. The FAC alleges that, beginning in August 2013, certain of the Defendants physically abused each of them. *Id.* ¶¶ 2-4. It also alleges that the District failed adequately to document this abuse, report it to parents of the Plaintiffs, or take reasonable steps to prevent it from recurring. *Id.* ¶¶ 2-4. The FAC advances 15 causes of action, two of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

which are proposed for class certification and proceedings: the first cause of action, which is brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and the second cause of action, which is brought under Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. §§ 794 *et seq.*

On July 11, 2016, Plaintiffs filed the present motion for class certification ("Motion"). Dkt. 63. In the FAC and in support of the Motion, Plaintiffs contend that the District fails to provide a safe learning environment for its students with developmental problems, including those with autism and intellectual disabilities. *Id.* at 7. They contend that the District fails to maintain a cohesive and comprehensive policy to provide for the accurate reporting to parents and staff of injuries to students that occur at school. They also claim that the District fails adequately to train and supervise its employees in a manner sufficient to ensure that students who are members of the proposed class are not injured by improper conduct of these employees. *Id.* at 7, 11-16. Plaintiffs contend that these students are systematically excluded from access to a public education as a result. *Id.* at 7.

In support of the Motion, Plaintiffs define the class in terms that vary somewhat from those set forth in the FAC. Thus, they propose a class composed of

> [a]ll students with developmental disabilities as defined in California Welfare & Institutions Code section 4512, attending school in Pomona Unified School District since August 2013, who are currently being or who have been denied their right to full and equal access to, and the use and enjoyment of, the facilities, programs, services, and activities of the Pomona Unified School District.

*Id.* at 2.

Defendants opposed the Motion (Dkt. 77) and Plaintiffs replied (Dkt. 86). A hearing on the Motion was held on August 29, 2016. Dkt. 105. At the hearing, the Court directed the parties to file supplemental briefing on the following issues: (i) whether the named Plaintiffs have standing given that neither is presently attending a traditional school within the District; (ii) whether the proposed class representatives are adequate under Fed. R. 23 for the same reasons; and (iii) whether the requested affirmative injunctive relief is appropriate and if so, specifying how that proposed relief as to training and reporting injuries will apply. *Id.* Plaintiffs filed their supplemental brief (Dkt. 109) and Defendants replied (Dkt. 115). Thereafter, the Motion was taken under submission. For the reasons stated in this Order, the Motion is **GRANTED**.

**II.      Factual Background**

      **A.      PUSD Policies and Procedures**

PUSD schools enroll approximately 25,000 students each year. Request for Judicial Notice ("RJN"), Dkt. 63-33, Ex. C (PUSD data showing enrollment of 24,673 students during the 2015-2016 school year). As of December 1, 2014, PUSD enrolled a total of 368 students with autism and 299 with intellectual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

disabilities. *Id.*, Ex. D.

       1.       Documentation and Notification

Under PUSD policy, when an "accident" occurs on campus that results in a student injury, parents must be notified and an accident report completed by the certified staff member under whose supervision the accident occurred. Declaration of Elizabeth Eubanks [Evidentiary] ("Eubanks Decl. II"), Dkt. 63-7, Ex. C at 4. Because the term "accident" is not defined within the policy, however, not all injuries may be reported as "accidents." *Id.*

PUSD utilizes three methods that could potentially be used to document student injuries: Zangle, the incident report, and the Behavior Emergency Report ("BER"). *Id.* at 4-5, 9.

**Zangle**, a data information management system, tracks student visits to the health office. *Id.* at 4. PUSD procedure requires any student who sustains an injury at school, regardless of the cause, to be referred to the health office at their school site. *Id.* at 4-5. At the health office, the school nurse or health services assistant should provide first aid or care to the child as needed, and then document the health office visit in the student's Zangle record by date, reason for visit, service provided, and disposition. *Id.* at 5. When a parent is notified of an injury, the notification should be documented in Zangle. *Id.* This procedure should be followed for all students, regardless of their disability status. *Id.*

PUSD also requires a written **incident report** for five categories of injuries: "(1) injuries that may require medical care; (2) injuries resulting from fights or other contact with other individuals; (3) injuries resulting from defective equipment or unsafe conditions; (4) injuries associated with a previous medical condition; (5) specific injuries requiring completion of a written report (sprain or dislocations, fractures, eye injuries, permanent tooth loosened or lost, lacerations requiring stitches, burns, all head injuries, nose injuries with swelling, unconsciousness)." *Id.*, Dkt. 63-10, Ex. F at 3 ("Guidelines for Personnel Making Student Incident Reports").

When an injury requires an incident report, parents must be notified by telephone or in writing. *Id.*, Dkt. 63-7, Ex. C at 5. All other injuries do not require notification to parents, although the school nurse or health services assistant may choose to provide notification in their sole discretion. *Id.* Any memos or notes sent home to the parent should be copied and placed in the student's health folder. *Id.* at 6. Although PUSD provides its health staff with blank memos or notes to parents, it does not require the health staff to notify parents in a particular format, except with regard to form notifications, such as those for head injuries. *Id.*

Under PUSD policy, incident reports are "confidential protected work product." *Id.*, Dkt. 63-10, Ex. F at 2. "Copies of this report are not to be given to anyone except the District's Risk Management Office." *Id.* Nor are they provided to special education staff. *Id.*, Dkt. 63-8, Ex. D at 54:17-55:9; Dkt. 63-9, Ex. E at 32:16-23, 34:13-35:3. The District's Guidelines for Personnel Making Student Incident Reports state as follows: "Student incidents/injuries may expose the District to liability; therefore . . . [w]hen an incident/injury is perceived by . . . administrators, nurses, office managers, teachers, aides to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

possible liability exposure, the report should be immediately called into Risk Management . . . . DO NOT DISTRIBUTE COPIES OF INCIDENT/INJURY REPORTS TO NON-DISTRICT PERSONNEL." *Id.* Dkt. 63-10, Ex. F at 3.

A **BER** is completed when a student is physically restrained. It must be completed whenever "emergency interventions" occur. *Id.*, Dkt. 63-7, Ex. C at 9. Emergency interventions are used to control "unpredictable, spontaneous behavior that poses clear and present danger of serious physical harm to the individual with exceptional needs, or others, and that cannot be immediately prevented by a response less restrictive than the temporary application of a technique used to contain the behavior." *Id.*, citing Cal. Educ. Code § 56521.1(a). When emergency interventions are used, PUSD's procedure is to notify, either orally or in writing, the parents of the student within one school day, and to document the incident in a BER, which is then forwarded to the responsible administrator. *Id.* at 9. The BER "must be completed the same day the incident occurs." *Id.*, Dkt. 63-11, Ex. G at 27.5. But it need not be provided to the student's parents. *Id.*, Dkt. 63-7, Ex. C at 9. The staff member who performed the emergency intervention is responsible for completing the BER. *See id.*, Dkt. 63-9, Ex. E at 14:15-18.

       2.       Training and Supervision

The District utilizes a comprehensive training program called "Non-Violent Physical Crisis Intervention" (NCPI). NCPI is a series of non-invasive physical restraint techniques designed to control severe physical acting-out behaviors. *Id.*, Dkt. 63-7, Ex. C at 12; Dkt. 63-11, Ex. G at 27.4. PUSD's own policy states that it "provides NCPI training and certification to all special education staff." *Id.*, Dkt. 63-11, Ex. G at 27.5. More specifically, PUSD claims that the training is "offered on a biannual basis to all special education staff, and focuses on the safe management of disruptive and assaultive behavior." *Id.*, Dkt. 63-7, Ex. C at 13.

However, the District's database which tracks attendance at such trainings provides only a broad description of the audience (e.g., "preschool teachers"), the total number of participants, the trainers involved, and the topic. *Id.*, Dkt. 63-5, Ex. A. It does not identify the names of the attendees.

The District's supervisory personnel do not receive incident reports or BERs. *Id.*, Dkt. 63-9, Ex. E at 16:6-17:12; 18:3-9; 21:14-19; Dkt. 63-10, Ex. F at 2.

    **B.**    **Named Plaintiffs**

       1.       J.V.

J.V., a nine-year-old boy with autism, attended elementary school in PUSD from August 2011 to October 2014. Declaration of Anabel Franco ("Franco Decl."), Dkt. 72, ¶ 3. While at PUSD, J.V. received special education and related services from the District. Franco Decl. at ¶ 4. Throughout his time at PUSD, J.V. sustained numerous physical injuries at school. He came home with a black eye during his first month at PUSD. *Id.* at ¶ 6. He came home on April 27, 2014 with multiple bruises and a puncture wound on his back and on August 29, 2014 with multiple bruises on his thigh and a bruise on his ankle the size of an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

egg. *Id.* at ¶¶ 9-10. J.V.'s mother repeatedly contacted his teachers and district representatives to raise concerns about J.V.'s injuries, but received no explanation. *Id.* at ¶¶ 7-8, 12-13.

On October 2, 2014, J.V. sustained another injury at school: his tooth cracked and fell out. *Id.* at ¶ 14. Later that day, J.V's mother received a phone call from J.V.'s teacher, informing her that J.V. had been physically restrained that day and that she would receive an incident report the next day. *Id.* at ¶ 15. On October 21, 2014, she received an incident report addressing the incident, not from the school but from Autism Spectrum Therapies, a third-party outside agency. *Id.* at ¶¶ 17, 19, Ex. A; FACAC, Dkt. 28, ¶ 37. No BER was completed documenting the use of the physical restraint. Eubanks Decl. II, Dkt. 63-9, Ex. E at 25:18-26:22.

On October 20, 2014, J.V. again came home from school with multiple bruises on his back and rib cage. *Id.* at ¶ 16. No one at the school could account for J.V.'s injuries. *Id.* Fearing for J.V.'s safety, his mother removed him from the school. *Id.* at ¶ 5.

J.V. currently receives home-based educational services from a non-PUSD provider, pursuant to an interim settlement agreement pending completion of assessments. Franco Decl. II, Dkt. 109-2, ¶ 4. The provision of such services is contingent upon J.V. living within the District's boundaries. *Id.*

J.V.'s mother states that "because of the District's actions, [J.V.] cannot return to school, and be safe, until PUSD changes their policies, practices, and procedures." *Id.* at ¶ 8. If the present lawsuit changes how PUSD trains, supervises, and interacts with students with developmental disabilities, she would like to return her son to public school as soon as possible. *Id.* at ¶ 10.

    2.    <u>B.K.</u>

B.K., a thirteen-year-old boy with autism, began attending middle school in PUSD in August 2014. Declaration of Cynthia Brown ("Brown Decl."), Dkt. 71 at ¶ 4. Shortly after commencing his school year, B.K. began exhibiting regressive behaviors: he cried when he arrived at school, had toileting accidents, and began regressing in his writing skills. *Id.* at ¶ 6. In late 2014, his mother noticed that he began flinching when people approached him and exclaiming "Red Face!" when he thought he was in trouble. *Id.* at ¶ 7. She expressed her concerns about the changes in his behavior at his IEP meeting on February 24, 2015. *Id.* at ¶ 8.

On March 5, 2015, B.K. came home from school with a red mark on his face and swelling on his right knee. *Id.* at ¶ 9. Several hours later, B.K.'s mother received a call from the principal, informing her that two students reported that a classroom aide pushed and slapped B.K. and that police had been contacted. *Id.* B.K's mother received the police report on the incident approximately one month after requesting a copy on July 14, 2015. *Id.* at ¶ 16. This is the only written documentation that she received regarding the March 5, 2015 incident. *Id.* B.K.'s school file, which his mother received approximately a month after requesting it, contained no documentation regarding the March 5, 2015 incident. *Id.* at ¶ 10. When she requested B.K.'s school file prior to the March 5 incident, the school staff told her that it was lost and that they would have to "make it up." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

B.K.'s Zangle log does not show an entry for March 5, 2015. Eubanks Decl. II, Dkt. 63-7, Ex. C at 11. In fact, B.K.'s Zangle records show several fields populated as "other" or "<unset>." *Id.* In other words, his records are missing information such as the reason for visit, service provided, and disposition. *Id.*

Out of concern for B.K.'s safety, B.K.'s mother requested that he be removed from his school. Brown Decl., Dkt. 71, ¶ 14. B.K. currently attends "a nonpublic school, Leroy Haynes, which is a non-PUSD provider." Brown Decl. II, Dkt. 109-1, ¶ 4. This placement was offered by the District through B.K.'s Individualized Education Plan. *Id.* If the present lawsuit changes how PUSD trains, supervises, and interacts with students with developmental disabilities, B.K.'s mother would like to return her son to public school as soon as possible. *Id.* at ¶ 8.[1]

### C.   Injunctive Relief Requested

Plaintiffs seek the following affirmative injunctive relief:

- Mandatory training of all staff who work with students with developmental disabilities.

- Development and effective implementation of a procedure whereby student injuries are reported and documented, and parents are notified regarding their rights when their child is injured at school, including a grievance procedure.

- Development and effective implementation of measures to ensure compliance with these policies by all District employees, including appropriate oversight of the special education program. This would include designating an ADA administrator with knowledge of the pertinent laws and policies and adequate training in restraint procedure and effective non-violent alternatives by an independent expert.

Plaintiffs' Supp. Motion, Dkt. 109 at 12-13. The proposed training includes:

- Comprehensive mandatory training in a research-validated program for positive behavior interventions and crisis management. If the use of a particular restraint or form of seclusion is approved for use with any student in an emergency or dangerous situation, all personnel must receive training in its appropriate use and dangers.

- Training in gathering and reporting data on each restraint, seclusion, and aversive interventions; on deaths, injury, lasting psychological effects, and other harm; and on the use of positive behavioral interventions and de-escalation methods.

---

[1] Plaintiffs filed declarations from four other guardians at litem of children who formerly attended schools in the PUSD. *See* Declarations of Angela Garcia, Cynthia Mesa-Lara, Frank Hahn, and Celia Fernandez, Dkts. 68, 69, 70, & 73. They assert that their children came home from school with injuries but that their schools failed to notify them of or account for the injuries. *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

- Training of senior administrators on analyzing trends within the school and among schools to ensure that physical interventions are used only in the rarest of situations, when absolutely unavoidable, and that positive behavioral intervention and de-escalation techniques are used to prevent their use.

*Id.* at 13.

### III. Analysis

#### A. Standing

Defendants did not challenge Plaintiffs' standing in response to the Motion. However, "federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (emphasis in original); *accord B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). Standing "is a jurisdictional element that must be satisfied prior to class certification." *Nelson v. King Cnty.*, 895 F.2d 1248, 1249 (9th Cir. 1990). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001).

To have standing to seek injunctive relief, a plaintiff must show that "he has suffered or is threatened with a concrete and particularized legal harm" and that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates*, 511 F.3d at 985 (internal citations and quotation marks omitted); *see also Plumas Unified*, 192 F.3d at 1264 (to have standing to seek injunctive relief, plaintiffs must demonstrate "a real or immediate threat" that defendants will subject plaintiffs to the same alleged wrong).

Plaintiffs J.V. and B.K. no longer attend District schools. Each claims to have left due to the dissatisfaction of his respective guardian with the treatment that is the basis for this litigation. J.V. receives home-based educational services from a non-PUSD provider, and B.K. attends a nonpublic school. Therefore, Defendants argue in their supplemental briefing, the named plaintiffs do not have standing, as any injunctive relief would not apply to them. Supp. Opposition, Dkt. 115 at 5.[2]

However, although neither J.V. nor B.K. presently attends a District school, each continues to reside within the geographic area served by the District. Moreover, the District continues to retain responsibility for providing education for both. It does so as to J.V. pursuant to the terms of a settlement agreement, and for B.K pursuant to the IDEA. Franco Decl. II, Dkt. 109-2, ¶ 4; Brown Decl. II, Dkt. 109-1, ¶ 4; Supp. Opposition, Dkt. 115 at 6. And, their respective guardians have declared the desire and intent to have

---

[2] The same issue is raised as to the four other putative class members whose guardians at litem filed declarations. *See* Garcia Decl., Dkt. 68, ¶ 3 (son "attended school in the Pomona Unified School District from September 2014 until June 2016"); Mesa-Lara Decl. Dkt. 69, ¶ 4 (son attended PUSD "from August 2013 until June 2016"); Hahn Decl., Dkt 70, ¶ 3 (son attended school in PUSD for three years); Fernandez Decl., Dkt. 73, ¶ 3 (grandson attended PUSD from 2014 to January 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

each minor return to PUSD schools once they become safe for Plaintiffs and others with their mental health conditions. Franco Decl. II, Dkt. 109-2, ¶ 10; Brown Decl. II, Dkt. 109-1, ¶ 8.

That there is a reasonable possibility that J.V. and B.K. will return to District schools upon a favorable resolution of the issues, combined with the District's continuing responsibility for the education of each of them, raises in this action "a sufficient likelihood that [each may] again be wronged in a similar way." *See e.g.*, *Honig v. Doe*, 484 U.S. 305, 317-23 (1988) (expelled 20-year-old remaining within the state continued to have standing to pursue state-wide injunction prohibiting allegedly illegal expulsion of students with disabilities, because there was a "reasonable expectation" that he may return to a school within the state and may again be subjected to the challenged action); *Plumas Unified*, 192 F.3d at 1264 (plaintiff student lacked standing to bring his section 1983 claim against school district because he no longer attended school in the district, but unlike Plaintiffs here, had no plans to return); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 119 (C.D. Cal. 2008) ("In order to establish standing, an ADA plaintiff can demonstrate a 'real and immediate threat of future injury' by showing an intent to return to the accommodation.") (citation omitted).[3]

For these reasons, Plaintiffs have standing to seek injunctive relief.[4]

### B. Class Definition

As noted, there is a distinction in the class definition alleged in the FAC and that proposed in support of the Motion. In general, courts are bound by the class definition proposed in the operative complaint. *See Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."); *accord Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996). An exception to this general rule has been acknowledged where a plaintiff in a putative class proceeding proposes to amend the class definition in a manner that narrows the scope of the putative class. *See e.g.*, *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (permitting plaintiff to propose new class definition in motion for class certification where new definition was "simply a narrower

---

[3] In the context of actions brought against employers, courts have held that former employees have standing to pursue injunctive relief on behalf of a putative class that includes current employees. *See e.g.*, *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975) ("[W]ith respect to plaintiffs who were former employees of the company, being familiar with the company's employment practices and being free from any possible coercive influence of the company's management, the plaintiffs are better situated than either job applicants or present employees to present an intelligent and strongly adverse case against the company's alleged discriminatory practices.") (internal quotation marks and parentheticals omitted); *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 490 n.6 (N.D. Cal. 1978) ("A rule disqualifying discharged employees from representing current employees as a matter of law would be intolerable, since it would allow an unscrupulous employer to immunize himself from class action suits" and "[t]he extent of [the former employees'] dissatisfaction and their freedom from fear of retaliation makes these former employees among the most likely plaintiffs in Title VII actions.").

[4] The FAC requests "[d]amages according to proof" for both of the causes of action for which Plaintiffs seek to certify a class. Dkt. 28 at 21-23. However, Plaintiffs did not discuss damages in the Motion (Dkt. 63-1), and in the Reply, stated that they "seek only injunctive relief under Rule 23(b)(2)." Dkt. 86 at 7. Thus, it is unnecessary to determine whether certification would be appropriate as to a class seeking damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

version of the class definition presented in the [operative complaint]."); *Knutson v. Schwan's Home Serv.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013).

Here, the new definition is not more narrow. Rather, it expands the proposed class in that it is no longer limited to students who have been exposed to abusive conduct. Nevertheless, it is reasonable and efficient to permit this revision for purposes of the Motion. This is warranted for three reasons. *First,* Defendants have not objected to the new definition on the grounds of prejudice. They have not, for example, claimed that class based discovery has proceeded under the initial definition and that new discovery would be needed as to the revised version. *Second,* if the new definition were not allowed, Plaintiffs could then seek to file an amended complaint that included it. This would simply prolong these proceedings, and would not serve the interests of the parties or the Court. *Third,* a district court has discretion to permit a revision of a class definition *sua sponte. See Bee, Denning, Inc. v. Capital App. Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015); *see also Aichele v. City of Los Angeles*, 314 F.R.D. 478, 485 (2013) (permitting new class definitions set forth in motion for class certification without considering whether they defined a more narrow class than the one alleged in the operative complaint, because under Fed. R. Civ. P 23(c)(1)(C), "a court's order granting or denying class certification may be altered or amended at any time before final judgment").

    **C.    Class Certification**

        1.    <u>Legal Standard</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551. Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

The first step in establishing the basis for class certification is for the putative class representatives to show that the proposed class meets each of the four requirements of Fed. R. Civ. P. 23(a). *Wal-Mart*, 131 S. Ct. at 2551; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Those requirements are: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *Wal-Mart*, 131 S. Ct. at 2550. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551.

If these four requirements are met, the next issue is whether the proposed class satisfies at least one of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

the independent requirements of Fed. R. Civ. P. 23(b). *See e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs contend that certification is appropriate pursuant to Rule 23(b)(2). It provides that a class proceeding "may be maintained . . . if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

    2.    Application

        a)    Requirements of Fed. R. Civ. P. 23(a)

            (1)    Numerosity

                (a)    Legal Standard

Fed. R. Civ. P. 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir.1964). No specific number of members is needed to warrant a class action. *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir.1967). "However, numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

                (b)    Application

Plaintiffs seek to certify a class of all PUSD students who have developmental disabilities such as autism and intellectual disabilities. As of December 1, 2014, PUSD enrolled a total of 368 students with autism and 299 with intellectual disabilities. *Id.*, Dkt. 63-8, Ex. D. These figures show that the numerosity requirement is met.

            (2)    Commonality

                (a)    Legal Standard

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks omitted). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* For the purposes of commonality, "even a single common question will do." *Id.* at 2556 (internal markings omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

"[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014), citing *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013). In a civil-rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499 (2005). "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

      *(b)*  *Application*

As noted, Plaintiffs contend that the District has inadequate policies and procedures with respect to documenting and notifying parents of in-school injuries to students. They also contest the adequacy of the training and supervision of staff who interact with students upon whom physical force has been used. Motion, Dkt. 63-1 at 25. Plaintiffs argue that these are common issues that can be resolved by the resolution of the following issue: Whether the District's policies and procedures, which affect all putative class members, expose them to a substantial risk of harm. *Id.*

Defendants respond that Plaintiffs' claims are "highly divergent" and require "individualized analysis." Therefore, they contend that common questions do not predominate. Opposition, Dkt. 77 at 16-17. For example, they argue that B.K.'s allegation that he was physically assaulted by a classroom aide requires a different analysis from J.V.'s allegation that he was improperly restrained and did not receive sufficient support from his school. *Id.* at 17-18, 20. The District also argues that alternative explanations may be presented for the injuries that were sustained, including whether they occurred outside of school, were self-inflicted or were the result of gross motor weakness. *Id.* at 18-20.[5]

Defendants' position is unpersuasive. Plaintiffs do not propose an adjudication of every instance of alleged mistreatment. Rather, Plaintiffs challenge system-wide policies and procedures that allegedly expose all putative class members to a risk of harm. These issues are premised on the assumption that a student may trigger a response. But, their gravamen is what happens in response, throughout out the District, both in terms of the treatment of the students and notice to their parents or guardians.

Courts have found commonality under parallel circumstances. In *Parsons*, the Ninth Circuit affirmed the class certification of state prisoners who alleged systemic deficiencies in the conditions of their

---

[5] Defendants have submitted certain documents in support of the argument that J.V. has a history of self-injuring behavior and motor weakness, and that many of his injuries can be attributed to "simple accidents." Opposition, Dkt. 77 at 20. Plaintiffs have objected to this proffered evidence, arguing that the materials have not been properly authenticated. *See* Dkts. 78, 97. As discussed above, this evidence is not material to the issue presented in the Motion, *i.e.*, whether the District's system-wide policies and procedures are sufficient. For the same reason, it is unnecessary to address the parties' dispute as to the timing of Plaintiffs' disclosure of four additional students who attended District schools and the admissibility of the corresponding declarations that identified each of them. See Dkts. 82, 97. These determinations are without prejudice to consideration of these arguments, and related ones, that may be presented by either or both parties following additional discovery and proceedings in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

confinement in isolation cells and in providing them appropriate, individual medical, dental and mental health services. 754 F.3d at 662. The defendants described the plaintiffs' claims as "little more than an aggregation of many claims of individual mistreatment." *Id.* at 676. "That description," according to the court, "rests upon a misunderstanding of the plaintiffs' allegations" because "[t]he complaint does not allege that the care provided on any particular occasion to any particular inmate . . . was insufficient, but rather that [prison] policies and practices of statewide and systemic application expose all inmates in [prison] custody to a substantial risk of serious harm." *Id.*

In *Armstrong*, a putative class of disabled prisoners and parolees alleged that the state parole authority failed to provide them with adequate accommodations at certain parole hearings. 275 F.3d at 854. The parole authority argued that there was no commonality given the wide variation in the nature of the disabilities among the class members. *Id.* at 868. The Ninth Circuit rejected this position, and explained that "individual factual differences among the individual litigants . . . will not preclude a finding of commonality" because "the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm from the Board's failure to accommodate their disabilities, to prosecute separate actions." *Id.*

*D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010) affirmed the certification of a class that challenged the social services provided by a state to children in foster care. The child protective agency argued that each of the approximately 10,000 children in its custody received individualized and specific placements, treatments, and service plans that necessarily changed based on new circumstances and the unique characteristics of each child. *Id.* at 1195. The agency maintained that, as a result, determining whether child protective services had inadequate monitoring policies would require an individual determination for each foster child. *Id.* The court found commonality because "Named Plaintiffs presented more than conclusory statements that [the state's child protective services'] agency-wide monitoring policies and practices, or lack thereof, create a risk of harm shared by the entire class." *Id.* at 1196. It also concluded that "[a]ll class members, by virtue of being in . . . foster care, are subject to the purportedly faulty monitoring policies of the [agency], regardless of their individual differences." *Id.* at 1196.

In *Rosas v. Baca*, a putative class composed of inmates in the Los Angeles County jail, sought class-wide relief based on alleged harm from deputy-on-inmate and inmate-on-inmate physical interactions. The plaintiffs claimed that these were the result of deficiencies in the management of the jail. 2012 WL 2061694, at *2 (C.D. Cal. Jun. 7, 2012). In certifying the class, the district court observed that, because common issues on that topic were presented, "individual factual differences among class members pose no obstacle to commonality." *Id.* at *3.

These cases provide support for a finding of commonality in the present action. As in *Armstrong* and *Stricklin*, the putative class members -- children with autism or intellectual disabilities -- may have individualized conditions and needs, but the common issue presented is the responsive policies and procedures within the District.

This outcome is not changed by Defendants' argument that a significant portion of the putative class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | | Date | October 27, 2016 |
|---|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | | |

members have not been harmed. As noted in *Parsons*, "although a presently existing risk may ultimately result in different future harm for different inmates -- ranging from no harm at all to death -- every inmate suffers exactly the same constitutional injury when exposed to a single statewide [prison] policy or practice that creates a substantial risk of serious harm." 754 F.3d at 676-78 (it "would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them" and "a remedy for unsafe conditions need not await a tragic event").

Similarly, *Stricklin* rejected the argument that commonality was not shown because only 1.2% of Oklahoma foster children in 2006 reported abuse or neglect. 594 F.3d at 1195. As the Court of Appeals explained, "though each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a risk of impermissible harm to all children in [child protective services'] custody." *Id.* at 1196; see also *Rosas*, 2012 WL 2061694, at *2-3 (finding commonality even though "most class members have not been harmed in any way.").

*Wal-Mart* does not change the outcome here. In *Wal-Mart*, a proposed class of 1.5 million female employees sought to bring Title VII claims based on a claimed corporate policy of allowing 3400 local managers to exercise discretion in their employment decisions. 131 S. Ct. at 2547. The Court concluded that plaintiffs' efforts to "sue about literally millions of employment decisions at once" thwarted commonality because "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 2552-54. The present claims do not, as Defendants suggest, turn on an assessment of potentially hundreds of subjective educational and behavioral-management decisions. Opposition, Dkt. 77 at 21. As noted, Plaintiffs allege deficiencies in uniform policies and procedures that apply to all putative class members.

For these reasons, the commonality requirement is met.

        (3)    <u>Typicality</u>

            (a)    *Legal Standard*

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defense of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if the "representative claims are 'typical,'" i.e., "if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Representative claims "need not be substantially identical." *Id.* The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

            (b)    *Application*

Plaintiffs contend that their claims are typical of those of the entire class because they arise from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

allegedly inadequate and ineffective policies and procedures. They repeat the argument that this has a common effect on all students within the District who have developmental disabilities. Motion, Dkt. 63-1 at 28. The District responds that the claims are not typical, because Plaintiffs are subject to unique defenses based on their individual claims. Opposition, Dkt. 77 at 26. For example, the District will respond to B.K.'s claim by referring to the prompt reporting of the allegations of physical abuse by a classroom aide. *Id.* at 26.

Defendants characterize potential class claims as an aggregation of individual grievances. However, the gravamen of these claims, and those of the two named Plaintiffs, is that students with developmental disabilities are exposed to a risk of harm due to alleged deficiencies in training, reporting and supervision. Typicality is not defeated simply because one class member was intentionally abused while another was improperly restrained. *See e.g.*, *Armstrong*, 275 F.3d at 869 ("Although there are minor differences in the nature of the specific injuries suffered by the various class members, the differences are insufficient to defeat typicality"); *Rosas*, 2012 WL 2061694, at *3 (typicality is met even where "the precise nature of the injuries suffered by the named plaintiffs may differ from those suffered by other class members").

For these reasons, the typicality requirement is met.

(4)    Adequacy of Representation

(a)    *Legal Standard*

Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. As a preliminary matter, named plaintiffs "themselves must be entitled to seek injunctive relief if they are to represent a class seeking such relief." *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 491 (C.D. Cal. 2013), citing *Hodgers-Durgin v. de La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

(b)    *Application*

Plaintiffs J.V. and B.K. seek to represent all students within the District who have developmental disabilities and are, or have been, exposed to the allegedly deficient policies and procedures. Defendants argue that J.V. and B.K. are not adequate representatives for the same reasons that they argue J.V. and B.K. lack standing. Supp. Opposition, Dkt. 115 at 13. Thus, the District's policies and procedures no longer apply to J.V., who receives home-based services, or to B.K., who attends a nonpublic school. *Id.* As noted above, evidence has been presented that the parents and guardians of J.V. and B.K. want each to return to District schools, and that the District still retains some responsibility for the current education that each is receiving. For the same reasons that B.K. and J.V. have standing, they are adequate to represent the interests of the class. There has been no showing that their desire to return to District schools is not genuine, or that they would somehow compromise the interests of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

other class members to advance their own. In this respect, it is significant that the Plaintiffs have conceded that they are pursuing only injunctive relief on behalf of the class.[6]

For these reasons, the adequacy-of-representation requirement is met.

      3.      Requirements of Fed. R. Civ. P. 23(b)(2)

           a)      Legal Standard

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686, citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, Rule 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights.").

The requirement of Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *accord Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125.

           b)      Application

Defendants contend that the standards of Rule 23(b)(2) cannot be met because a single injunction could not provide suitable classwide relief. They argue that, based on the allegations made in the FAC, there would be a need for individualized relief for the members of the putative class. Opposition at 28-30. This position is not persuasive. Plaintiffs challenge the policies and practices regarding documenting and reporting injuries and training and supervising staff. As noted above, these issues apply to all class

---

[6] To be sure, each named plaintiff is pursuing separate, invidual claims for monetary relief. This raises a theoretical possibility that each could, for example, elect to dismiss the class claims as part of a settlement of their monetary claims. However, given the obligations of both class counsel and class representatives, this is not a sufficient basis to conclude that these representatives do not meet the adequacy requirement. *See Saucedo v. NW Mgmt. & Realty Servs., Inc.*, 290 F.R.D. 671, 683 (E.D. Wash. 2013) ("[T]he fact that a named class representative elects to pursue additional claims in an individual capacity does not automatically give rise to a conflict. . . . Unless the named representative's interest in pursuing individual claims undermines his or her incentive to vigorously prosecute the class-wide claims, no conflict arises.") (citing *In re Pet Food Products Liab. Litig.,* 629 F.3d 333, 343–45 (3d Cir.2010)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

members. Consequently, an injunction could address them. *See Parsons*, 754 F.3d at 689 ("Contrary to the defendants' assertion that each inmate's alleged injury is amenable only to individualized remedy, every inmate in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in statewide [prison] policy and practice"); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) ("Defendants argue that because the plaintiffs have alleged differing harms requiring individual remedies, no injunction will be appropriate for the entire class . . . . We disagree. Insofar as the deficiencies of the child welfare system stem from central and systemic failures, the district court did not abuse its discretion in certifying a 23(b)(2) class at this stage of the litigation.").

For these reasons, the requirements of Rule 23(b)(2) are satisfied.[7]

### D.     Ascertainability

Courts have recognized that "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 596 (N.D. Cal. 2015). The Ninth Circuit has not addressed whether such a requirement applies to a proposed class under Rule 23(b)(2). *Id.* at 597. The purpose of this requirement is to provide procedural safeguards for class members who must be located and contacted about the opportunity to opt out of the class. *Id.* at 597. However, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.*, citing *Wal-Mart*, 131 S. Ct. at 2557 (internal quotation marks omitted).

Based on this distinction from a Rule 23(b)(3) class, other Circuits as well as district courts in the Ninth Circuit have concluded that ascertainability is not a requirement for the certification of a Rule 23(b)(2) class. *See e.g., In re Yahoo Mail Litig.*, 308 F.R.D. at 597; *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many . . . other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief . . . .").

However, even assuming that ascertainability is a requirement that applies to the Rule 23(b)(2) class proposed here, it can be met. The District assesses its students for autism and intellectual disabilities, and reports the number of students who meet these criteria to the California Department of Education. Plaintiffs' RJN, Dkt. 63-33, ¶ 4; Eubanks Decl. II, Dkt. 63-8, ¶ 5, Ex. D at 15:17-16:5, 17:23-18:9. Consequently, the identities of students who are members of the class can be ascertained. It is also reasonable to assume that the District has contact information as to such students, given that the class

---

[7] As noted above, Plaintiffs seek "[d]amages according to proof" under their ADA and Rehabilitation Act claims (FAC ¶¶ 95, 103), but have conceded that they are not seeking damages on a class basis. Moreover, monetary relief under Rule 23(b)(2) is permitted only if it is "incidental to requested injunctive or declaratory relief." *Wal-Mart*, 131 S. Ct. at 2560. Plaintiffs have not stated the nature of the monetary relief that may be sought. Accordingly, it has not been shown to be incidental to the requested injunctive relief, and the determination as to Rule 23(b)(2) does not apply to a potential request for monetary relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-07895 JAK (MRWx) | Date | October 27, 2016 |
|---|---|---|---|
| Title | J.V., et al. v. Pomona Unified School District, et al. | | |

is defined as "students with developmental disabilities … attending school in Pomona Unified School District since August 2013…." Dkt. 63 at 2.

### IV. Conclusion

For the reasons stated in this Order, the Motion is **GRANTED**.

**IT IS SO ORDERED.**

|   | : |   |
|---|---|---|
| Initials of Preparer | ak | |